[No. S059454. July 2, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
HAL LEE FLOOD, Defendant and Appellant.

**COUNSEL**

Carlton E. Lacy, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman, Sharon G. Birenbaum and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GEORGE, C. J.—A jury found defendant Hal Lee Flood guilty of the offense of evading a vehicle operated by a pursuing peace officer resulting in serious bodily injury, a violation of Vehicle Code section 2800.3.[1] To establish the offense set forth in that statute, the prosecution must prove, among other things, that the motor vehicle that the defendant was attempting to elude was operated by a "peace officer" as defined in the Penal Code. When instructing the jury regarding the elements of the offense, however, the trial court did not advise the jury that it should determine whether the persons in the pursuing motor vehicle were "peace officers," but instead informed the jury—in conformity with the uncontradicted evidence that had been presented at trial—that the police officers in that vehicle were peace officers, thus effectively removing this element of the crime from the jury's consideration. We granted review to decide whether the trial court's action in this regard amounted to constitutional error, and, if so, whether such an error requires reversal of defendant's conviction whether or not the error actually was prejudicial under the circumstances of the case.

We conclude that although the trial court committed constitutional error, its action does not amount to "structural error" within the meaning of the governing federal constitutional decisions and thus is not reversible per se, but rather, like most constitutional errors, is subject to harmless error analysis under both the California and United States Constitutions. We further conclude that, under the circumstances of this case, the error in question was harmless beyond a reasonable doubt and thus does not warrant reversal of the judgment. Accordingly, the judgment of the Court of Appeal, which reached a similar conclusion, is affirmed.

I

On May 22, 1994, City of Richmond Police Officers Rudy Bridgeman and Michael Gurney were on duty in their police vehicle when they stopped a Cadillac that had made an illegal U-turn. Bridgeman exited from the vehicle and approached the driver's side of the Cadillac. He observed the driver, whom he identified as defendant, looking at him in the rearview mirror.

---

[1]Further undesignated statutory references are to the Vehicle Code.

When Bridgeman almost had reached the driver's door, the Cadillac took off rapidly. Bridgeman returned to the police car, and the officers gave chase. Eventually the Cadillac entered an intersection and struck a van, which flipped over and ejected four occupants, all of whom sustained serious bodily injury. Defendant was charged with evading a vehicle operated by a pursuing peace officer resulting in serious bodily injury (§ 2800.3),[2] as well as unlawful driving or taking of a vehicle (§ 10851, subd. (a)).[3]

When Bridgeman and Gurney testified at trial concerning the foregoing events, the prosecutor questioned them regarding their employment as police officers. The following exchange occurred at the beginning of the prosecution's case, during the direct examination of Bridgeman: "Q: Could you tell us where you work, for the record. [¶] A: Richmond Police Department. Q: You're a peace officer with that department? [¶] A: Yes. . . . Q: And you were working in that position [on the date defendant committed the offense]? [¶] A: Yes." Gurney similarly testified on direct examination: "I'm a police officer for the [C]ity of Richmond Police Department," and he stated that he was on duty the day of defendant's offense. Defendant did not cross-examine Bridgeman or Gurney with regard to their status as Richmond police officers.

The defense case regarding the section 2800.3 charge was based upon three contentions: (1) the police vehicle which Bridgeman and Gurney were operating, a "detective's car," was not "distinctively marked" as required to

---

[2]Section 2800.3 provides in pertinent part: "Whenever willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury to any person, the person driving the pursued vehicle, upon conviction, shall be punished by imprisonment in the state prison . . . ."

Section 2800.1, subdivision (a), provides:

"(a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist:

"(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

"(2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

"(3) The peace officer's motor vehicle is distinctively marked.

"(4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."

When defendant committed the offense, the subdivisions of section 2800.1 quoted above, presently designated as (a)(1) through (a)(4), were designated as subdivisions (a) through (d), but contained identical language. Further citations to section 2800.1 will refer to the current subdivision designations.

A city police officer comes within the definition of a peace officer. (Pen. Code, § 830.1, subd. (a).)

[3]Defendant also was charged with reckless driving (§ 23104), but before trial the court granted the prosecutor's request to dismiss that charge.

establish a violation of section 2800.3; (2) defendant lacked the requisite intent to evade the officers because the passenger in the Cadillac was holding a gun to defendant's head and forced him to speed away after the officers stopped them; and (3) defendant's actions in evading the police officers were not a proximate cause of injury to the van's occupants, because the van entered the intersection against a red light and its driver testified that he saw no pursuing police vehicle as he approached the intersection. None of the testimony elicited during the defense case specifically addressed Bridgeman's and Gurney's employment status as police officers with the Richmond Police Department. Throughout the trial, however, evidence presented in connection with other issues corroborated Bridgeman's and Gurney's testimony that they were employed as police officers by the City of Richmond.[4]

When instructing the jury on the elements of the offense defined by section 2800.3, the trial court stated:

"[E]very person who flees or attempts to elude a pursuing peace officer in violation of Vehicle Code Section 2800.1, and the flight or attempt to elude causes death or serious bodily injury to any person is guilty of a violation of Vehicle Code Section 2800.3, a felony.

*"Officer Bridgeman and Officer Gurney are peace officers.*

". . . . . . . . . . . . . . . . . . . . . . . .

"In order to prove a violation of Vehicle Code section 2800.3, each of the following elements must be proved:

"1. A person, while operating a motor vehicle, willfully fled or otherwise attempted to elude a pursuing peace officer;

"2. Such person did so with the specific intent to evade the pursuing peace officer;

---

[4]For example, several witnesses described the authorities' sequestration and interview of Bridgeman and Gurney following the accident. One Richmond police officer involved in the investigation stated that he observed "Officer Bridgeman of the Richmond Police Department" when he arrived at the station, as well as Officer Gurney. A California Highway Patrol officer testified that his duties in connection with the accident included investigating the involvement of "two RPD officers." When cross-examining Bridgeman, defense counsel elicited testimony that Bridgeman was sequestered because "[his] department want[ed] to know if [he was] responsible in any way . . . ." Gurney likewise testified that he was "interviewed by another Richmond police officer" as part of the investigation. In addition, Bridgeman and Gurney testified they were assigned to a joint task force of the California Highway Patrol and the Richmond Police Department, and that the officers followed the Richmond Police Department's policy regarding high-speed chases.

"3. The peace officer's vehicle exhibited at least one lighted red lamp visible from the front;

"4. The person saw or reasonably should have seen the red lamp;

"5. The peace officer's vehicle sounded a siren as reasonably necessary;

"6. The peace officer's motor vehicle was distinctively marked, as defined;

"7. The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and

"8. The flight from or the attempt to elude a pursuing police officer was the cause of serious bodily injury to another person." (Italics added.)

This instruction was taken from CALJIC No. 12.86 (5th ed. 1993 new) as it appeared in the January 1994 through January 1995 pocket parts to volume 2. After the first paragraph quoted above, this version of CALJIC No. 12.86 included the bracketed phrase: "[_____ is a peace officer.]."[5] On the instruction given by the trial court, the handwritten words "Officers Bridgman [sic] and Gurney" appear in the blank portion of the bracketed phrase quoted above; in addition the word "is" is changed to "are," and the word "officer" is made plural. The blank on the instruction form next to "REQUESTED BY: PEOPLE" is checked. The space next to "REQUESTED BY: DEFENDANT" is left blank, although defendant's list of requested instructions contains a check mark next to CALJIC No. 12.86, and the trial court's discussion with counsel regarding which instructions would be given suggests that both parties requested the instruction.[6] Nothing in the record, however, indicates that defendant specifically asked the court to give the optional peace officer portion of CALJIC No. 12.86. On the other hand, the record does not indicate, and defendant does not claim, that he objected to this aspect of CALJIC No. 12.86.

The jury found defendant guilty of violating sections 2800.3 and 10851, subdivision (a). On appeal, defendant argued, among other things, that the trial court erred in instructing the jury that Bridgeman and Gurney were

[5] A 1995 revision to the instruction, however, deleted the bracketed phrase and added the following comment to the Use Note: " 'Peace officer' defined in CALJIC 1.26." This revision first appeared in the July 1995 pocket part to volume 2 of CALJIC (5th ed.). Although the trial of this case occurred in mid-July 1995, presumably the trial court and the parties were unaware of this contemporaneous revision.

[6] Other instructions requested by both parties contain check marks in the blanks beside both "PEOPLE" and "DEFENDANT."

peace officers. As set forth above, one element of the crime described in section 2800.3 is that the pursuing vehicle must be "operated by a peace officer, as defined in . . . the Penal Code, and that peace officer is wearing a distinctive uniform." (§ 2800.1, subd. (a)(4).) The trial court instructed the jury that the prosecution must prove that the "peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform" but failed to give an instruction defining the term "peace officer" (in accordance with Penal Code section 830.1, subdivision (a)), instead informing the jury that the two officers were peace officers. Defendant contended on appeal that the trial court's instruction impermissibly removed the peace officer component of this element of the charged offense from the jury's consideration, and that such an error cannot be deemed harmless and necessarily requires reversal.

The Court of Appeal agreed that the trial court erred in instructing the jury that Bridgeman and Gurney were peace officers, but it rejected defendant's argument that the error could not be considered harmless. Relying primarily upon *People* v. *Richie* (1994) 28 Cal.App.4th 1347, 1354-1360 [34 Cal.Rptr.2d 200], the appellate court held that harmless error analysis was appropriate under the *Cantrell-Thornton* exception to the state constitutional rule of per se reversal for instructional omissions relating to an element of the charged offense. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 556 [205 Cal.Rptr. 265, 684 P.2d 826]; see *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256] and *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523·P.2d 267], both overruled on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) The Court of Appeal observed that the *Cantrell-Thornton* exception permits affirmance when an element omitted from the jury instructions does not concern a material issue presented by the evidence. Because Bridgeman and Gurney testified they were employed as police officers by the City of Richmond—thus meeting the statutory definition of "peace officer"—and no contradictory evidence was offered, the Court of Appeal concluded that "the trial court's erroneous omission of a nonmaterial element from its instructions to the jury did not affect the fundamental fairness of [defendant's] trial and does not constitute reversible error."

We granted defendant's petition for review to decide whether a trial court's instruction that a particular element of an offense has been established may be subject to harmless error analysis.

## II

■ Under established law, instructional error relieving the prosecution of the burden of proving beyond a reasonable doubt each element of the

charged offense violates the defendant's rights under both the United States and California Constitutions. The proper appellate standard for assessing prejudice arising from such errors, however, has been evolving for more than 30 years and remains uncertain under California and federal law. Defendant has framed the issue presented in this case in terms of the viability of the *Cantrell-Thornton* exception to a reversal-per-se rule based upon California constitutional law. For this reason, and because we need not reach the federal constitutional question if the California Constitution requires automatic reversal, we begin by examining the origins of California's reversal-per-se rule and its subsequent development.

## A

*People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33] held that "the defendant has a constitutional right to have the jury determine every material issue presented by the evidence." The defendant in that case, convicted of first degree murder, argued on appeal that the trial court erred in refusing to give an instruction he requested on the lesser included offense of manslaughter. After reviewing the evidence presented at trial, we agreed, explaining that such an instruction must be given "if there is any evidence of manslaughter deserving of consideration," even if such evidence consists of the defendant's "incredible" testimony. (*Id.* at pp. 727, 729.) *Modesto*'s conclusion in this regard was reaffirmed in *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913], where the trial court failed to give a sua sponte instruction on involuntary manslaughter. We subsequently disapproved *Modesto* and *Sedeno* to the extent they require jury instructions "whenever *any* evidence is presented, no matter how weak," and held instead that instructions are required only if there is evidence "substantial enough to merit consideration . . . ." (*People* v. *Flannel, supra,* 25 Cal.3d 668, 684, fn. 12, original italics [failure to give requested instruction on diminished capacity].)

*People* v. *Modesto*'s holding (59 Cal.2d at p. 730, italics added) that the California Constitution requires the trial court to instruct on "every material *issue* presented by the evidence" (in that case, a lesser included offense) has been extended to require instructions on every material *element* of an offense. (E.g., *People* v. *Phillips* (1966) 64 Cal.2d 574, 584-585 [51 Cal.Rptr. 225, 414 P.2d 353] [erroneous instruction rendering it unnecessary for jury to find malice]; *People* v. *Reynolds* (1988) 205 Cal.App.3d 776, 779-780 [252 Cal.Rptr. 637] [failure to instruct on knowledge required for crime of possession of an illegal weapon]; *People* v. *Valenzuela* (1985) 175 Cal.App.3d 381, 392-393 [222 Cal.Rptr. 405] [failure to instruct on all elements of assault]; see also *People* v. *Sheffield* (1985) 168 Cal.App.3d 158,

162-164 [214 Cal.Rptr. 40] [instruction given on crime different from that charged]; cf. *People* v. *Odle* (1988) 45 Cal.3d 386, 415 [247 Cal.Rptr. 137, 754 P.2d 184] [failure to instruct on all elements of special circumstance]; *People* v. *Garcia*, *supra*, 36 Cal.3d at pp. 555-556 [no instruction on the intent to kill then required for felony-murder special circumstance].) Moreover, the defendant's right under the California Constitution to have the jury determine every material issue presented by the evidence has been held to preclude the judge from directing a verdict of guilty. (*People* v. *Stewart* (1986) 185 Cal.App.3d 197, 205-206 [229 Cal.Rptr. 445] [improper postconviction finding that the defendant was guilty of a criminal offense not presented to or considered by the jury].)

Some Courts of Appeal have stated that a failure to instruct on the essential elements of an offense amounts to a violation of this state constitutional principle " 'whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted element . . . .' " (*People* v. *Gary* (1987) 189 Cal.App.3d 1212, 1217 [235 Cal.Rptr. 30]; *People* v. *McNiece* (1986) 181 Cal.App.3d 1048, 1057 [226 Cal.Rptr. 733], disapproved on other grounds in *People* v. *McFarland* (1989) 47 Cal.3d 798, 804-805 [254 Cal.Rptr. 331, 765 P.2d 493]; *People* v. *Sheffield*, *supra*, 168 Cal.App.3d at p. 164; *People* v. *Birreuta* (1984) 162 Cal.App.3d 454, 462 [208 Cal.Rptr. 635]; *People* v. *Hamilton* (1978) 80 Cal.App.3d 124, 133 [145 Cal.Rptr. 429].) Although such a requirement—that there be evidence supporting a finding for the defendant—may apply to failure to give a requested instruction on a defense (for which the defendant has the burden of proof) (see *People* v. *Barton* (1995) 12 Cal.4th 186, 195 [47 Cal.Rptr.2d 569, 906 P.2d 531]), we agree with defendant that it does not govern the trial court's duty to instruct on the essential elements of the crime. Because, under the due process guarantees of both the California and United States Constitutions, the prosecution has the burden of proving beyond a reasonable doubt each essential element of the crime (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 725-727 [224 Cal.Rptr. 719, 715 P.2d 680]), the jury may find for the defendant even if the only evidence regarding an element of the crime favors the prosecution, but that evidence nevertheless falls short of proving the element beyond a reasonable doubt. As discussed below, the existence of evidence from which the jury could find for the defendant is relevant in determining whether the instructional error is *prejudicial*, but the due process requirement under article I, section 15, of the California Constitution that the trial court give instructions regarding—and the jury determine—all essential elements of the offense does not depend upon the existence of evidence affirmatively favoring the defendant. Of course, if the asserted error consists of a failure to instruct on a lesser included offense, there must have been substantial evidence from

which a jury reasonably could conclude that the defendant was guilty of the lesser offense, but not the greater offense. (*People* v. *Barton*, *supra*, 12 Cal.4th at pp. 194-195 & fn. 4, 201.)

 Applying these principles to the present case, we conclude that the trial court's instruction to the jury that Bridgeman and Gurney were peace officers violated defendant's due process right under the California Constitution to have the jury determine each element of the offense set forth in section 2800.3.[7] An individual violates that statute whenever his or her "willful flight or attempt to elude a pursuing peace officer in violation of Section 2800.1 proximately causes death or serious bodily injury to any person . . . ." One element of a violation of section 2800.1 is that the pursuing peace officer's motor vehicle "is operated by a peace officer, as defined in [Penal Code sections 830 through 832.9], and that peace officer is wearing a distinctive uniform." (§ 2800.1, subd. (a)(4).) Penal Code section 830.1, subdivision (a), defines the term "peace officer" to include "any police officer, employed in that capacity and appointed by the chief of police . . . of a city." Therefore, in prosecuting defendant for violating section 2800.3, the prosecutor had the burden of proving beyond a reasonable doubt that Bridgeman and Gurney were so employed. The trial court did not instruct the jury to determine whether the officers fell within the Penal Code's definition of "peace officer." Instead, it informed the jury that Bridgeman and Gurney were peace officers, thus removing this element of the crime from the jury's consideration.[8] Even though the only evidence regarding the peace officer element supports a finding for the prosecution, prior appellate decisions make clear that the trial court's instruction violated defendant's right to due process under the California Constitution.

## B

The Attorney General concedes that the peace officer instruction was constitutional error but maintains that the error was not prejudicial. In

---

[7]Defendant's failure to object to the peace officer instruction does not preclude our review for constitutional error. (Pen. Code, § 1259 ["The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."].)

[8]As explained, the trial court's peace officer instruction was consistent with CALJIC No. 12.86 as it existed until the 1995 revision, which deleted that optional component from the instruction and noted that "peace officer" is defined in CALJIC No. 1.26. (See Use Note to CALJIC No. 12.86 (6th ed. 1996).) Various classifications of individuals falling within the Penal Code's definition of "peace officer" are listed in CALJIC No. 1.26 (6th ed. 1997 pocket pt.), including "any police officer, employed in that capacity and appointed by the chief of police or the chief executive of the agency, of a city." The Use Note to CALJIC No. 1.26 (6th ed. 1996) states: "This instruction should be used to define a peace officer. The court should not simply tell the jury that a police officer is a peace officer. (*People* v. *Lara* (1994) 30 Cal.App.4th 658 [35 Cal.Rptr.2d 886].)"

determining the proper standard under California law for assessing whether the trial court's error prejudiced defendant, we again begin our analysis with an examination of *People* v. *Modesto, supra*, 59 Cal.2d 722, which expressly held that the *Watson* standard of review—requiring consideration of whether there is a "reasonable probability" there would have been a result more favorable to the defendant absent the error[9]—was inapplicable to the trial court's failure to instruct the jury on a lesser included offense: "Regardless of how overwhelming the evidence of guilt may be, the denial of such a fundamental right cannot be cured by article VI, [former] section 4½ [now section 13], of the California Constitution, for the denial of such a right itself is a miscarriage of justice within the meaning of that provision."[10] (*Modesto, supra*, 59 Cal.2d at p. 730.) *Modesto* further concluded that the error could not be cured by presuming that the jury necessarily rejected the evidence of manslaughter by reaching a verdict of first degree murder instead of second degree murder. "Since we do not know what effect an instruction that the jury could return a verdict of manslaughter would have had on its deliberations, we cannot conclude that it necessarily rejected the evidence of manslaughter." (*Id.* at p. 731.)

The latter aspect of *Modesto* was overruled in *People* v. *Sedeno, supra*, 10 Cal.3d at pages 720-721, which stated: "[E]xperience during the decade since *Modesto* has demonstrated that adherence to that rule is neither necessary to assure defendants their right to jury consideration of all material issues presented by the evidence nor required to avoid prejudice. Thus, in some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." Thus, *Sedeno* recognized that such an error does not invariably defy harmless error analysis. *Sedeno* reaffirmed *Modesto*, however, insofar as *Modesto* held that if the omitted fact is not determined by the jury in some other context, the failure to instruct on the lesser included offense is reversible per se. (*Id.* at pp. 721-724.)

---

[9]*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].

[10]Article VI, section 13, of the California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In *People* v. *Phillips, supra,* 64 Cal.2d at pages 584-586, we applied *Modesto*'s reversible-per-se rule to the erroneous withdrawal of an element of an offense from the jury's consideration. Subsequent decisions similarly have applied this automatic reversal rule—sometimes as qualified by the *Sedeno* exception—to instructional error omitting an element of the crime. (E.g., *People* v. *Henderson* (1977) 19 Cal.3d 86, 96 [137 Cal.Rptr. 1, 560 P.2d 1180]; *People* v. *Satchell* (1971) 6 Cal.3d 28, 41 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *People* v. *Reynolds, supra,* 205 Cal.App.3d at pp. 780-782; *People* v. *McNiece, supra,* 181 Cal.App.3d at pp. 1057-1058; *People* v. *Valenzuela, supra,* 175 Cal.App.3d at p. 393; *People* v. *Sheffield, supra,* 168 Cal.App.3d at p. 164; *People* v. *Birreuta, supra,* 162 Cal.App.3d at pp. 461-462; *People* v. *Hamilton, supra,* 80 Cal.App.3d at pp. 133-134; *People* v. *Lilliock* (1968) 265 Cal.App.2d 419, 429-430 [71 Cal.Rptr. 434].)

As mentioned above, *Sedeno* created an exception to *Modesto*'s rule of automatic reversal where the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. Subsequent decisions further clarified and limited *Modesto*'s holding. In *People* v. *Cantrell, supra,* 8 Cal.3d 672, the defendant was charged with murder and offered a defense of diminished capacity. The trial court instructed on manslaughter as a lesser offense, but only to the extent this offense might have resulted from the defendant's diminished mental capacity. We rejected the defendant's argument that the instruction should not have been limited in that manner. Because, under the evidence, the only possible basis upon which the jury could have found the defendant guilty of manslaughter was pursuant to the theory of diminished capacity, he was not entitled to a general instruction on manslaughter. (*Id.* at p. 684.) *Cantrell* explained: "The rule requiring the court to instruct the jury upon every material question upon which there is any evidence whatsoever deserving of consideration [citing *Modesto*], does not imply instructions should be given on issues and questions not raised by the evidence." (*Id.* at p. 685.)

In *People* v. *Thornton, supra,* 11 Cal.3d 738, the trial court gave an instruction on kidnapping that did not require the jury to find that substantial asportation increased the risk of harm to the victim. After the jury convicted the defendant on that count, we held in another case that such asportation is an element of the crime. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) *Thornton* nevertheless affirmed the kidnapping conviction after finding that the evidence clearly showed that the asportation met the *Daniels* standard. (*Thornton, supra,* 11 Cal.3d at pp. 767-768.) A concurring and dissenting opinion disagreed with the majority on this point, arguing that the *Modesto* rule should extend to failure to instruct on an essential element of the crime, and that evidence in

the record supporting a finding for the prosecution on the omitted element cannot render such error nonprejudicial. (*Id.* at pp. 770-775 (conc. & dis. opn. of Mosk, J.).) The majority responded that even if the holdings of *Modesto* and *Sedeno* properly applied to the defective instruction, reversal was not required because, as a matter of law, the asportation did substantially increase the risk of harm, and there was no evidence worthy of consideration to the contrary. (*Id.* at p. 768, fn. 20.) Thus, *Thornton* recognized another exception to *Modesto*'s reversal-per-se rule.

The next significant development in state constitutional analysis of prejudice arising from instructional error came after this court's decision in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], which held that proof of intent to kill was essential to a finding of a felony-murder special circumstance under the 1978 death penalty initiative.[11] In many of the death penalty cases tried under the 1978 law before *Carlos*, the jury had not been instructed that intent to kill was an element of the special circumstance. Thus, the court was faced with the question of determining whether, and in what circumstances, the failure to instruct on intent to kill ever could be found harmless. *People* v. *Garcia, supra,* 36 Cal.3d 539, addressed that significant issue and concluded that the United States Supreme Court, at the time *Garcia* was decided, would find such an error to be reversible per se. (*Id.* at p. 554.) *Garcia* noted, however, that the plurality opinion in *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 87 [103 S.Ct. 969, 977-978, 74 L.Ed.2d 823] described two exceptions to a rule of per se reversal: " 'if the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted,' and 'if the defendant conceded the issue of intent.' " (*Garcia, supra,* 36 Cal.3d at pp. 554-555.) We further stated that "California experience with a similar test of prejudicial error established in [*Modesto*] indicates that additional exceptions may be appropriate." (*Id.* at p. 555, fn. omitted.) The opinion then describes the *Sedeno* exception, which permits affirmance where the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions. (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721.) In addition, after discussing *People* v. *Cantrell, supra,* 8 Cal.3d 672, and *People* v. *Thornton, supra,* 11 Cal.3d 738, *Garcia* articulated the *Cantrell-Thornton* exception to a rule of reversal per se under California law. Under this fourth exception, *Carlos* error would not require reversal "where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and . . . the record not only establishes the necessary intent as a matter of law but shows the

---

[11]*Carlos* was overruled in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1138-1147 [240 Cal.Rptr. 585, 742 P.2d 1306].

contrary evidence not worthy of consideration." (*Garcia, supra,* 36 Cal.3d at p. 556, fn. omitted.) Finding none of the foregoing exceptions to the reversal-per-se rule to be applicable under the facts of that case, *Garcia* reversed the felony-murder special circumstance. (*Id.* at pp. 557-558.)

In *Garcia* we emphasized that the case was decided "on the basis of federal precedent" and that we took "no position on whether, in the absence of controlling federal authority, we would apply the California prejudicial per se test of *Modesto* or some other, less stringent test." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 555, fn. 10.) Furthermore, *Garcia* stated: "We are uncertain whether the United States Supreme Court will endorse the *Cantrell-Thornton* exception to its apparent rule favoring automatic reversal." (*Id.* at p. 556.) Nevertheless, we expressed an intention to apply that exception to those cases "in which the evidence unequivocally and conclusively established intent . . . ." (*Id.* at pp. 556-557.) Indeed, the same month *Garcia* was decided, the court considered application of the *Cantrell-Thornton* exception to *Carlos* error. (*People* v. *Whitt* (1984) 36 Cal.3d 724, 735 [205 Cal.Rptr. 810, 685 P.2d 1161].) Furthermore, as recently as 1994, the Court of Appeal applied this exception to hold that failure to instruct on an essential element of a crime did not require reversal. (*People* v. *Richie, supra,* 28 Cal.App.4th 1347, 1353-1360 [no instruction on the "distinctive uniform" element of section 2800.1]; see also *People* v. *Smith* (1987) 188 Cal.App.3d 1495, 1507-1510 [234 Cal.Rptr. 142], disapproved on other grounds in *People* v. *Davis* (1994) 7 Cal.4th 797, 804-805, 810 [30 Cal.Rptr.2d 50, 872 P.2d 591] [applying the *Cantrell-Thornton* exception to hold nonprejudicial under the California Constitution an instruction that erroneously omitted an element of a special circumstance].)

As noted, the Court of Appeal in the present case, relying upon *People* v. *Richie, supra,* 28 Cal.App.4th 1347, concluded that the *Cantrell-Thornton* exception permits affirmance, even though the trial court failed to instruct the jury to determine whether Bridgeman and Gurney were peace officers as defined in the Penal Code, because (1) defendant cannot claim lack of notice of an expressly enumerated element of the offense charged, (2) both Bridgeman and Gurney testified regarding that element without contradiction, and (3) defendant presented no contrary testimony. Defendant argues that the *Cantrell-Thornton* exception has been superseded by more recent federal decisions. Because those federal cases concern federal constitutional harmless error analysis, however, they cannot govern the interpretation of the state constitutional standard for assessing prejudice arising from instructional error. We nevertheless determine that in light of recent decisions of this court, a reconsideration of state constitutional harmless error rules, including the *Cantrell-Thornton* exception, is justified, but such reconsideration leads us to a conclusion different from that urged by defendant.

Notwithstanding the foregoing California decisions that have applied a heightened standard of reversible error to instructional errors removing an element of an offense from the jury's consideration, several of our more recent cases have analyzed the prejudicial effect of such errors under a *Watson* standard. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1312, fn. 54 [18 Cal.Rptr.2d 796, 850 P.2d 1]; *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1228, fn. 27 [249 Cal.Rptr. 71, 756 P.2d 795]; *People* v. *Odle, supra,* 45 Cal.3d at p. 415; *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 765 [175 Cal.Rptr. 738, 631 P.2d 446]; cf. *People* v. *Wims* (1995) 10 Cal.4th 293, 314-315 [41 Cal.Rptr.2d 241, 895 P.2d 77] [applying a *Watson* standard to a failure to instruct on an element of a sentencing enhancement].) Although, in applying a *Watson* standard, these decisions generally have not cited or analyzed the line of cases, discussed above, that applied a more stringent standard to the same type of error, as we shall explain we conclude that these more recent decisions utilized the proper standard under California law for assessing prejudice arising from instructional omissions that withdraw an element of a crime from the jury's consideration.

To the extent it has been applied to instructional errors affecting an element of a crime, the reversal-per-se rule of *Modesto* rests, in our view, upon an improper interpretation and application of the explicit harmless error provision contained in the California Constitution. ■ As noted above (fn. 10, *ante*), article VI, section 13, of the California Constitution specifically addresses the prejudicial effect of instructional "misdirection of the jury." That constitutional provision states, in relevant part: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In *People* v. *Wims, supra,* 10 Cal.4th at pages 314-315, we observed: " 'The word "misdirection" logically includes every kind of instructional error. It seems manifest that incorrect, ambiguous, conflicting, or wrongly omitted instructions may equally "misdirect" the jury's deliberations. Nothing in the language or history of article VI, section 13, suggests that its requirement of actual prejudice, determined by reference to "the entire cause, including the evidence," applies to some forms of "misdirection," but not to others.' (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 579 [34 Cal.Rptr.2d 607, 882 P.2d 298].)" On its face, therefore, the California Constitution does not support a rule that treats the failure to instruct on an element of a crime (uniquely, among instructional errors) as reversible per se. (Cf. *People* v. *Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037].)

Nor did the law preceding *Modesto* dictate such a rule. In support of its conclusion that failure to instruct on a lesser included offense necessarily

amounts to a miscarriage of justice under article VI, section 13, of the California Constitution, *People* v. *Modesto, supra,* 59 Cal.2d at pages 730-731, cited a number of cases. Although those decisions did apply a reversible-per-se rule for other types of errors, none is directly on point and none compels a holding that such instructional error is reversible per se. (*People* v. *Brommel* (1961) 56 Cal.2d 629, 634 [15 Cal.Rptr. 909, 364 P.2d 845] [admission of involuntary confession]; *People* v. *Rogers* (1961) 56 Cal.2d 301, 307 [14 Cal.Rptr. 660, 363 P.2d 892] [no express waiver of right to jury trial before guilty plea]; *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 302 [10 Cal.Rptr. 842, 359 P.2d 274] [denial of reasonable opportunity to prepare and present defense motion or objection]; *People* v. *Trout* (1960) 54 Cal.2d 576, 585 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418] [admission of involuntary confession]; *People* v. *Holmes* (1960) 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583] [no express waiver of right to jury trial]; *People* v. *McKay* (1951) 37 Cal.2d 792, 798 [236 P.2d 145] [trial by biased jurors]; *People* v. *Sarazzawski* (1945) 27 Cal.2d 7, 11, 17 [161 P.2d 934] [denial of reasonable opportunity to prepare and present motion for new trial]; *People* v. *Mahoney* (1927) 201 Cal. 618, 627 [258 P. 607] [misconduct of judge during trial, evidencing partiality]; see also *Rogers* v. *Richmond* (1961) 365 U.S. 534, 540-541 [81 S.Ct. 735, 739-740, 5 L.Ed.2d 760] [considering admission of involuntary confession under federal Constitution].) Indeed, *People* v. *Sarazzawski, supra,* 21 Cal.2d at page 18, distinguished instructional errors from the denial of an opportunity to prepare and present a defense motion, noting that the former expressly fall within the scope of the California Constitution's harmless error provision. *Modesto's* only additional analysis of the harmless error issue (59 Cal.2d at p. 731) was disapproved in *People* v. *Sedeno, supra,* 10 Cal.3d at pages 720-721.

Moreover, in *People* v. *Cahill, supra,* 5 Cal.4th 478, we overruled a series of California decisions beginning in the 1960's, including *Brommel* and *Trout,* cited in *Modesto,* which had held that whenever an involuntary confession is admitted at a criminal trial, the California Constitution requires reversal of the conviction without regard to the strength of the other evidence in the record. (*Cahill, supra,* 5 Cal.4th at p. 509, fn. 17.) After reviewing at some length the language and history of article VI, section 13 (originally adopted as article VI, section 4½, in 1911), we concluded that those decisions were inconsistent with the constitutional provision: "[A]lthough the improper admission of a confession is likely to be prejudicial in many cases, that consequence does not, in our view, justify the judicial adoption of a state-law rule that automatically and monolithically treats *all* improperly admitted confessions as requiring reversal of the defendant's conviction; the California constitutional reversible-error provision was adopted for the specific purpose of eliminating just such a prophylactic

approach to reversible error." (*Cahill, supra,* 5 Cal.4th at p. 503, original italics, fn. omitted.) Observing, further, that this court previously had found reversal unwarranted in the "rare case" in which two invalidly obtained confessions simply were cumulative of the eight valid confessions also introduced at trial (*People* v. *Jacobson* (1965) 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555]), *Cahill* concluded that there are other settings in which an appellate court can determine with confidence that there is no reasonable probability that the exclusion of the confession would have affected the result. (*Cahill, supra,* 5 Cal.4th at pp. 503-505.) In such instances, " 'a refusal to inquire into the impact, if any, of the confession on the verdict would result in complete abandonment of article VI, [section 13], of the California Constitution.' " (*Id.* at p. 504, quoting *People* v. *Jacobson, supra,* 63 Cal.2d 319, 330, italics omitted.) We emphasized the broad spectrum of circumstances encompassed by the category of involuntary confessions and reasoned that "an overly broad rule of reversible error that *compels* the reversal of judgments rendered in fairly tried criminal proceedings on the basis of errors that are unlikely to have affected the outcome, often will have the detrimental effect of eroding the public's confidence in the criminal justice system"—an important public policy underlying the reversible error provision in the California Constitution. (*Cahill, supra,* 5 Cal.4th at pp. 508-509, original italics.)

*Cahill* acknowledged that "certain errors, by their nature, result in a 'miscarriage of justice' within the meaning of the California harmless error provision requiring reversal without regard to the strength of the evidence received at trial." (*People* v̇. *Cahill, supra,* 5 Cal.4th at p. 493 [listing examples]; see also *People* v. *Ernst* (1994) 8 Cal.4th 441, 448-449 [34 Cal.Rptr.2d 238, 881 P.2d 298] [determination of a defendant's guilt by court trial without an express waiver by the defendant of the right to jury trial always requires reversal].) We held, however, that the admission of an involuntary confession was an error occurring during the presentation of the case to the jury and could be assessed quantitatively, in the context of other evidence presented, to determine whether its admission was prejudicial or harmless. (*Cahill, supra,* 5 Cal.4th at pp. 502-503, 511; accord, *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 306-312 [111 S.Ct. 1246, 1262-1266, 113 L.Ed.2d 302] [overruling *Rogers* v. *Richmond, supra,* 365 U.S. 534].)

Like involuntary confessions, instructional errors that have the effect of removing an element of a crime from the jury's consideration encompass a broad spectrum of circumstances and may be assessed in the context of the evidence presented and other circumstances of the trial to determine whether the error was prejudicial. The development of various exceptions to the reversible-per-se rule for instructional error affecting an element of a crime,

including the *Cantrell-Thornton* exception, "implicitly revealed the fundamental incompatibility of a reversible-per-se rule with the basic premise of the governing state constitutional provision." (*People* v. *Cahill, supra,* 5 Cal.4th at p. 508.) When a reviewing court examines the record to determine, for example, whether the jury necessarily found the withdrawn element under other, properly given instructions (*People* v. *Sedeno, supra,* 10 Cal.3d at p. 721), or whether the record shows that the omitted element is established as a matter of law and no contrary evidence is worthy of consideration (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556), the court is engaging in a type of harmless error analysis that is entirely inconsistent with a rule of automatic reversal. Rather than perpetuating an ostensible reversible-per-se rule that is riddled with exceptions meant to delineate circumstances in which such instructional error categorically may be deemed harmless—a rule that is fundamentally inconsistent with the language and purpose of the specific California constitutional harmless error provision embodied in article VI, section 13, of the California Constitution—we hold, as in *Cahill, supra,* 5 Cal.4th at pages 509-510, and consistent with the line of decisions beginning with *People* v. *Murtishaw, supra,* 29 Cal.3d at page 765, that the prejudicial effect of such error is to be determined, *for purposes of California law,* under the generally applicable prejudicial error test embodied in article VI, section 13. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836-837.)[12]

## C

Reviewing the trial court's constitutional error under the *Watson* standard, we find no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury to determine whether Officers Bridgeman and Gurney were peace officers. The prosecution presented unremarkable and uncontradicted evidence that they were employed as police officers by the City of Richmond. In addition, throughout the trial these officers and other witnesses corroborated that evidence in the course of testifying regarding other issues. At no point during the trial did defendant contest or even refer to the peace officer component of the distinctive uniform element of the crime. Defendant argued at trial that the police car was not distinctively marked as required by the statute but never disputed that it was driven by peace officers.[13] Furthermore, nothing in the record suggests, and defendant does not assert, that he

[12]Accordingly, *People* v. *Phillips, supra,* 64 Cal.2d 574, and its progeny are overruled to the extent they are inconsistent with our conclusion in this case.

[13]Although Penal Code section 830.1 provides that a police officer of a city must be "appointed by the chief of police or the chief executive of the agency" to be a peace officer, defendant does not contend that the prosecution was required to present evidence of such appointment to prove that Bridgeman and Gurney were peace officers. In *People* v. *Lara*

sought to present or was prevented from introducing evidence regarding the issue in question.

Based upon our review of the record, we conclude that no rational juror, properly instructed, could have found that these police officers were not peace officers. "It would, indeed, require fantastic speculation on our part to hold that a reasonable jury could have found otherwise." (*People* v. *Odle*, *supra*, 45 Cal.3d at p. 416.) Under these circumstances, requiring that the judgment be reversed on this ground would constitute a miscarriage of justice. We believe that this is a classic example of the type of situation in which California Constitution, article VI, section 13, was intended to apply and to bar a court from reversing a judgment. We find the instructional error harmless under the California Constitution.

## III

### A

■ As discussed in connection with defendant's California constitutional claim, the United States Supreme Court has held that jury instructions relieving the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense violate the defendant's due process rights under the federal Constitution. (*Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182]; *Carella* v. *California* (1989) 491 U.S. 263, 265 [109 S.Ct. 2419, 2420, 105 L.Ed.2d 218] (*per curiam*); *People* v. *Kobrin* (1995) 11 Cal.4th 416, 422-423 & fn. 4 [45 Cal.Rptr.2d 895, 903 P.2d 1027] [collecting cases].) Such erroneous instructions also implicate Sixth Amendment principles preserving the exclusive domain of the trier of fact. (*Carella* v. *California*, *supra*, 491 U.S. at p. 265 [109 S.Ct. at p. 2420]; *People* v. *Kobrin*, *supra*, 11 Cal.4th at p. 423.) ■ "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he [or she] may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.]" (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. 277 [113 S.Ct. at p. 2080]; *People* v. *Kobrin*, *supra*, 11 Cal.4th at p. 423.) The prohibition against directed verdicts for the prosecution extends to instructions that effectively prevent the jury from finding that the prosecution failed to prove a particular element of the crime beyond a reasonable doubt. (*United States* v. *Gaudin* (1995) 515 U.S. 506, 510-511, 522-523 [115 S.Ct. 2310, 2313-2314, 2319-2320, 132 L.Ed.2d 444]; *People* v. *Kobrin*, *supra*, 11 Cal.4th at pp. 423-424;

---

(1994) 30 Cal.App.4th 658, 665-667 [35 Cal.Rptr.2d 886], the Court of Appeal specifically rejected such a contention as "unreasonable," concluding that in light of the purpose of the statute and the presumption that official duty regularly has been performed (Evid. Code, § 664), evidence that officers were employed by a city as police officers established their status as peace officers under Penal Code section 830.1.

*People* v. *Hedgecock* (1990) 51 Cal.3d 395, 407 [272 Cal.Rptr. 803, 795 P.2d 1260].)

 We have seen that the trial court's instruction that Bridgeman and Gurney were peace officers effectively prevented the jury from deciding whether the prosecution proved this component of the distinctive uniform element of the crime set forth in section 2800.3. In essence, the trial court directed a finding, or a "partial verdict," for the prosecution on that particular aspect of the crime. Therefore, it is clear under prior decisions that the peace officer instruction violated defendant's due process rights under the United States Constitution.

B

The proper application of federal constitutional harmless error review of instructional error affecting the elements of a crime has been evolving for some time. In *People* v. *Garcia, supra,* 36 Cal.3d at page 556, we expressed uncertainty concerning whether the United States Supreme Court would approve the *Cantrell-Thornton* exception to its then apparent rule favoring reversal per se under the federal Constitution. Subsequent to our decision in *Garcia,* however, several United States Supreme Court decisions have developed the law in this area.

In *Rose* v. *Clark* (1986) 478 U.S. 570, 579-581 [106 S.Ct. 3101, 3106-3108, 92 L.Ed.2d 460], the high court held that an erroneous instruction creating a rebuttable presumption of malice, which impermissibly had lightened the prosecution's burden of proof on that element, could be harmless if no rational jury could find that the defendant committed the criminal act but did not intend to cause injury—when, under the applicable law, an intent to cause injury would establish malice. (See also *Carella* v. *California, supra,* 491 U.S. 263, 267 [109 S.Ct. 2419, 2421] [erroneous instruction creating a presumption of intent is subject to harmless error analysis if "no rational jury could find the predicate acts but fail to find the fact presumed"].) The court in *Rose* v. *Clark* broadly stated, as a general rule, that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." (*Rose* v. *Clark, supra,* 478 U.S. at p. 579 [106 S.Ct. at p. 3106]; see also *People* v. *Dyer* (1988) 45 Cal.3d 26, 62-63 [246 Cal.Rptr. 209, 753 P.2d 1].)

A year later, the court held in an obscenity case that an instruction containing an erroneous definition of obscenity was harmless error. (*Pope* v. *Illinois* (1987) 481 U.S. 497, 503 [107 S.Ct. 1918, 1922, 95 L.Ed.2d 439].) The court stated in *Pope*: "To the extent that cases prior to *Rose* [v. *Clark*, *supra*,] may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof [citation], after *Rose*, they are no longer good authority." (*Id.* at p. 503, fn. 7 [107 S.Ct. at p. 1922]; see also *People* v. *Dyer*, *supra*, 45 Cal.3d at p. 64; *People* v. *Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Avila* (1995) 35 Cal.App.4th 642, 659 & fn. 10 [43 Cal.Rptr.2d 853].)

In *Arizona* v. *Fulminante, supra,* 499 U.S. 279, a decision holding that the erroneous admission of a coerced confession is not reversible per se, the court elaborated upon harmless error analysis by distinguishing between "trial errors," which are subject to the general rule that a constitutional error does not require automatic reversal, and "structural" errors, which "defy analysis by harmless-error standards" and require reversal without regard to the strength of the evidence or other circumstances. (*Id.* at pp. 306-310 [111 S.Ct. at pp 1262-1265].) *Fulminante* characterized trial errors as those that occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt." (*Id.* at pp. 307-308 [111 S.Ct. at p. 1264].) Structural errors, on the other hand, are "structural defects in the constitution of the trial mechanism . . . affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (*Id.* at pp. 309-310 [111 S.Ct. at p. 1205].) The court noted examples of trial errors, including erroneous jury instructions (*id.* at pp. 306-307 [111 S.Ct. at pp. 1262-1263]), as well as structural errors, which include the total deprivation of the right to counsel at trial, a biased judge, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial. (*Id.* at pp. 309-310 [111 S.Ct at pp. 1264-1265].) With regard to such structural errors, *Fulminante* explained: " 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " (*Id.* at p. 310 [111 S.Ct. at p. 1265], quoting *Rose* v. *Clark, supra*, 478 U.S. at pp. 577-578 [106 S.Ct. at pp. 3105-3106].)

In *Yates* v. *Evatt* (1991) 500 U.S. 391 [111 S.Ct. 1884, 114 L.Ed.2d 432], overruled on other grounds in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 72, footnote 4 [112 S.Ct. 475, 482, 116 L.Ed.2d 385], the high court returned to

the question of the effect of erroneous presumptions and clarified the proper application of harmless error analysis to such errors. *Yates* reiterated that the test is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (500 U.S. at p. 403 [111 S.Ct. at p. 1892], quoting *Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) The court explained: "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates, supra*, 500 U.S. at p. 403 [111 S.Ct. at p. 1893].) Such a conclusion may be reached when "the force of the evidence presumably considered by the jury in accordance with the instructions [independently of the improper presumption] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption." (*Id.* at p. 405 [111 S.Ct. at p. 1893].)

Subsequently, the United States Supreme Court made clear that at least one type of instructional error may amount to a structural defect in the trial mechanism that requires reversal regardless of the strength of the evidence of the defendant's guilt. In *Sullivan* v. *Louisiana, supra,* 508 U.S. 275, the trial court gave a constitutionally deficient reasonable doubt instruction. In explaining why *Chapman* harmless error analysis cannot be applied to such an error, *Sullivan* stated: "Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at pp. 2081-2082], original italics.) Because a constitutionally defective reasonable doubt instruction renders it impossible for the jury to return a verdict of guilty beyond a reasonable doubt, "[t]here is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. [Citation.] The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." (*Id.* at p. 280 [113 S.Ct. at p. 2082], original italics.)

Applying the analysis set forth in these decisions, California courts, as well as lower federal courts, have reached diverse results when considering

whether instructional error affecting one or more elements of a crime is reversible per se. For example, in *People* v. *Harris* (1994) 9 Cal.4th 407 [37 Cal.Rptr.2d 200, 886 P.2d 1193], the trial court, when giving an instruction setting forth the elements of robbery, improperly defined the term "immediate presence" in connection with the element requiring that the defendant must have taken property from a person or from his or her immediate presence. (*Id.* at p. 415.) In assessing the prejudicial effect of that instruction, this court unanimously agreed that the error was subject to harmless error analysis (*id.* at p. 424; *id.* at p. 440 (conc. & dis. opn. of Mosk, J.); *id.* at pp. 455-456 (conc. & dis. opn. of Kennard, J.)), and the primary question addressed in the court's various opinions was the proper manner in which *Chapman* analysis should be applied in that context.

In *People* v. *Kobrin, supra,* 11 Cal.4th 416, we reached a different conclusion with regard to an erroneous failure to have the jury determine the question of materiality as an element of perjury. The trial court instructed the jury that if it found the defendant made certain statements identified in the instruction, " 'said statements were material matters within the definition of perjury read to you.' " (*Id.* at p. 421.) Applying the analysis set forth in *Sullivan* v. *Louisiana,* we reasoned that because the instruction specifically removed the issue of materiality from the deliberative process, there was no "object" upon which harmless error scrutiny could operate; attempting to infer a finding of materiality based upon the instructions that were given would have rested "solely on conjecture, effectively substituting this court for the jury as the trier of fact." (*Id.* at p. 429.) We further observed that the instructional error prevented the defendant from presenting evidence on the issue, thus making it impossible to determine that the error was harmless beyond a reasonable doubt, because we could not assess " 'whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' " (*Id.* at p. 430, quoting *Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at pp. 2081-2082], original italics; see also *People* v. *Cummings, supra,* 4 Cal.4th at pp. 1312-1315 [failure to instruct on four of the five elements of robbery is reversible per se].)[14]

The federal circuit courts are divided concerning the proper application of harmless error review for instructional errors. An example of the conflicting

---

[14]Compare also *People* v. *Daniels* (1993) 18 Cal.App.4th 1046, 1052-1053 [22 Cal.Rptr.2d 877] (instruction that 500 feet is a "substantial distance" as a matter of law, with reference to an element of the offense of kidnapping, required reversal because it removed the issue from the jury's determination) and *People* v. *Barre* (1992) 11 Cal.App.4th 961, 965-966 [14 Cal.Rptr.2d 307] (instruction conclusively establishing the truth of a prior conviction allegation was held prejudicial per se) with *People* v. *Avila, supra,* 35 Cal.App.4th 642, 662-663 (failure to instruct on element of offense did not "contribute to the verdict" because of uncontradicted testimony favoring the prosecution), *People* v. *Higareda* (1994) 24 Cal.App.4th 1399, 1406-1407 [29 Cal.Rptr.2d 763] (instruction stating that defendant's actions satisfied force and fear elements of robbery offense was harmless error), and *People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 779-780 [17 Cal.Rptr.2d 743] (failure to instruct on

approaches to the issue is *U.S.* v. *Johnson* (4th Cir. 1995) 71 F.3d 139, where the defendant was convicted of armed robbery of a credit union. An essential element of the offense required the credit union to be federally insured. The prosecution presented uncontradicted evidence of the credit union's insured status, and the trial court instructed the jury that the credit union robbed by defendant fell within the statutory definition. The defendant unsuccessfully objected to this instruction on the ground that it improperly removed an element of the offense from the jury's consideration. On appeal, the government conceded that the instruction was erroneous but contended that the error was harmless. A majority of the court disagreed. Relying upon the defendant's right to have the jury determine his guilt of every element of the crime, and upon *Sullivan* v. *Louisiana; supra*, 508 U.S. 275, the majority determined that it could not apply *Chapman* analysis, because the jury was not told that the credit union's federally insured status was an element of the crime, but instead was instructed that the credit union fell within the statutory definition as a matter of law. At most, the majority reasoned, it could conclude that the jury surely *would* have found the defendant guilty. As in *Sullivan*, the majority opinion found that to so conclude would be speculative and improper. (*U.S.* v. *Johnson, supra*, 71 F.3d at p. 144.) The dissenting opinion, however, characterized the federally insured status of the credit union as a "peripheral, technical requirement of the statute, that which distinguishes the conduct as a federal crime . . . ." (*Id.* at p. 147 (dis. opn. of Niemeyer, J.).) It noted that all issues regarding the defendant's criminal conduct were submitted to the jury; the defendant need not have known about the federally insured status of the credit union, and there was incontrovertible evidence of that status. In the dissent's view, the majority's holding establishing a rule of per se reversal "finds in the error a degree of influence that it did not have, and wrongly focuses on the 'virtually inevitable presence of immaterial error' rather than on determining whether the trial is rendered fundamentally unfair. . . . There is no question that the trial, as conducted, reliably served as a vehicle for determining whether [the defendant] was guilty or innocent." (*Ibid.*, citations omitted; compare also *U.S.* v. *Muse* (4th Cir. 1996) 83 F.3d 672, 677-681 [district court's failure to have the jury find an element of the crime to which the defendant had stipulated amounts to a partial directed verdict requiring reversal per se], with *U.S.* v. *Gonzales* (2d Cir. 1997) 110 F.3d 936, 944-947 [instructional omission after same stipulation as in *Muse* is not necessarily structural error but rather must be evaluated in light of the particular nature, context, and significance of the constitutional violation].)

---

aspect of element of offense was harmless error in light of substantial, uncontradicted evidence); compare *People* v. *Johnson* (1993) 6 Cal.4th 1, 46 [23 Cal.Rptr.2d 593, 859 P.2d 673] (failure to instruct on intent to kill for multiple-murder special circumstance was harmless under *Chapman,* because the overwhelming evidence left it "beyond a reasonable doubt the verdict would have been the same had the jury been instructed regarding the necessity of finding an intent to kill").

Last term, however, the United States Supreme Court decided two cases— *California* v. *Roy* (1996) 519 U.S. 2 [117 S.Ct. 337, 136 L.Ed.2d 266] (*per curiam*) and *Johnson* v. *United States* (1997) 520 U.S. 461 [117 S.Ct. 1544, 137 L.Ed.2d 718]—that bear on this issue, and we believe that these very recent decisions strongly indicate that instructional errors removing an element from the jury's consideration are not, as a general matter, structural defects in the trial mechanism that automatically require reversal under the federal Constitution.

In *California* v. *Roy, supra,* 519 U.S. 2 [117 S.Ct. 337, 136 L.Ed.2d 266], the trial court committed *Beeman* error by failing properly to instruct the jury regarding the intent a defendant must have had to be found guilty of aiding and abetting his confederate's crime.[15] The California Court of Appeal affirmed the conviction after finding the error harmless beyond a reasonable doubt (*People* v. *Roy* (1989) 207 Cal.App.3d 642, 645 [255 Cal.Rptr. 214]), and we denied review. The federal district court denied defendant's petition for a writ of habeas corpus, agreeing that the error was harmless because, on the facts of the case, no rational juror could have found that the defendant knew the confederate's purpose and had helped him without also finding that the defendant had intended to help him. The Ninth Circuit Court of Appeals, hearing the matter in bank, reversed the federal district court's denial of the defendant's petition for a writ of habeas corpus. It concluded that the instructional omission could be harmless only if a review of the facts found by the jury establishes it *necessarily* found the omitted element, and that the record did not show that the jury made such a finding. (*Roy* v. *Gomez* (9th Cir. 1996) 81 F.3d 863, 867.)

The United States Supreme Court reversed the Ninth Circuit's decision after concluding that the appellate court had applied a harmless error standard more strict than that required on collateral review of a state court determination. (*California* v. *Roy, supra,* 519 U.S. at pp. 4-6 [117 S.Ct. 337, 136 L.Ed.2d at pp. 270-271] (hereafter *Roy*).) *Roy* explained that the Ninth Circuit majority had drawn its harmless error standard from a concurring opinion in *Carella* v. *California, supra,* 491 U.S. 263, which set forth the views of several justices concerning the proper manner in which to determine whether an error regarding the use of a presumption was harmless.[16] The court noted that after *Carella,* however, *Brecht* v. *Abrahamson* (1993)

---

[15]*People* v. *Beeman* (1984) 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318].

[16]Justice Scalia's concurring opinion in *Carella* v. *California, supra,* 491 U.S. 263, 270 [109 S.Ct. 2419, 2423], suggested three situations in which a reviewing court could be confident that an erroneous instruction creating a conclusive presumption did not contribute to the jury's verdict and thus could be deemed harmless: (1) if the instruction concerned a charge of which the defendant was acquitted (and did not affect other charges); (2) if the instruction affected an "element of the crime that the defendant in any case admitted"; and (3)

507 U.S. 619, 637 [113 S.Ct. 1710, 1721-1722, 123 L.Ed.2d 353] held that a federal court reviewing a state court determination in a habeas corpus proceeding ordinarily should apply the harmless error standard enunciated in *Kotteakos* v. *United States* (1946) 328 U.S. 750, 776 [66 S.Ct. 1239, 1253, 90 L.Ed. 1557], which is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Roy* further explained that although *Brecht* recognized that the *Kotteakos* harmless error standard did not apply to structural errors, *Brecht* "held that the *Kotteakos* standard did apply to habeas review of what the Court called 'trial errors,' including errors in respect to which the Constitution requires state courts to apply a stricter, *Chapman*-type standard of 'harmless error' when they review a conviction directly." (*Roy*, *supra*, 519 U.S. at p. 5 [117 S.Ct. at p. 338, 136 L.Ed.2d at p. 270].)

*Roy* then expressly concluded that the instructional omission in that case fell within the category of trial errors subject to harmless error review: "This Court has written that 'constitutional error' of the sort at issue in *Carella* [creating an improper conclusive presumption] is a 'trial error,' not a 'structural error,' and that it is subject to 'harmless error' analysis. [Citation.] The state courts in this case applied harmless error analysis of the strict variety, and they found the error 'harmless beyond a reasonable doubt.' [Citation.] The specific error at issue here—an error in the instructions that defined the crime—is, as the Ninth Circuit itself recognized, as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission.' [Citation.] No one claims that the error at issue here is of the 'structural sort' that ' "[defies] analysis by 'harmless error' standards." ' [Citation.] The analysis advanced by the Ninth Circuit, while certainly consistent with the concurring opinion in *Carella*, does not, in our view, overcome the holding of *Brecht* . . . that for reasons related to the special function of habeas courts, those courts must review such error (error that may require strict review of the *Chapman*-type on direct appeal) under the *Kotteakos* standard." (*Roy*, *supra*, 519 U.S. at pp. 5-6 [117 S.Ct. at p. 339, 136 L.Ed.2d at pp. 270-271].)[17]

On remand from the court's decision in *Roy*, a majority of the Ninth Circuit adopted the analysis of the former dissenting opinion to that court's

---

if other facts necessarily found by the jury are so closely related to the ultimate fact that no rational juror could find those facts without also finding that the presumed fact was established.

[17]In *Roy*, Justice Scalia authored a concurring opinion, joined in relevant part by Justice Ginsburg, expressing the view that the absence of a "formal verdict" on the intent element of the crime could not be "rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise." (*Roy*, *supra*, 519 U.S. at p. 7 [117 S.Ct. at p. 339, 136 L.Ed.2d at p. 272] (conc. opn. of Scalia, J.).) The concurrence concluded that *Beeman* error could be harmless "only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding

prior in bank decision, and held that the failure to instruct on intent was harmless under the *Kotteakos* standard of review. (*Roy* v. *Gomez* (9th Cir. 1997) 108 F.3d 242, 243 [incorporating *Roy* v. *Gomez, supra,* 81 F.3d 863, 870-871], cert. den. *sub nom. Roy* v. *Maddock* (1997) __ U.S. __ [118 S.Ct. 196, 139 L.Ed.2d 134].) The new majority opinion held inapplicable the strict standard set forth in *Carella*'s concurrence and, by extension, in Justice Scalia's concurring opinion in *Roy* (see fn. 17, *ante*), which asks whether a rational jury necessarily found certain facts that were equivalent to the omitted findings. Instead, the new majority opinion reasoned, the court must review the entire record in order to determine the effect of the error; in *Roy*, that meant asking whether the trial court's failure properly to instruct on intent in the jury instruction on aiding and abetting had a substantial and injurious effect upon the jury's verdict. After considering the evidence before the jury and its other findings, the majority found no reasonable probability that the defendant did not assist his confederate with the intent to further the crime. The new dissenting opinion in *Roy* adhered to the standard set forth in Justice Scalia's concurring opinions in *Carella* and *Roy* and would have held that, because the jury's actual findings were not equivalent to a finding of intent to further the crime, the conviction should have been set aside. (*Roy* v. *Gomez, supra,* 108 F.3d at pp. 243-246 (dis. opn. of Hug, C. J.).)

Although the United States Supreme Court's decision in *Roy* considered the proper harmless error standard to be applied on collateral review, we find its analysis pertinent here. In holding that the *Kotteakos* standard for collateral review of constitutional errors governed the instructional omission in *Roy*, the high court found that the error fell within the general category of "trial errors" that are subject to *Chapman* harmless error review on direct appeal. The majority opinion in *Roy* also declined to embrace the conclusion in Justice Scalia's concurring opinion that the error could be deemed harmless only in the very narrow, circumscribed situations described therein. In our view, *Roy*'s analysis indicates that instructional errors—whether misdescriptions, omissions, or presumptions—as a general matter fall within the broad category of trial errors subject to *Chapman* review on direct appeal. The Ninth Circuit's majority opinion on remand is consistent with that view.

Furthermore, as noted above, another United States Supreme Court decision handed down last term lends further support to the conclusion we reach. *Johnson* v. *United States, supra,* 520 U.S. 461 [117 S.Ct. 1544, 137 L.Ed.2d 718], involved a federal perjury prosecution. At the close of the trial, the district court instructed the jury that the element of materiality was a

---

this point as well." (*Ibid.,* citing *Carella* v. *California, supra,* 491 U.S. at p. 271 [109 S.Ct. at pp. 2423-2424] (conc. opn. of Scalia, J.).)

question for the judge to decide, and that he had determined that the defendant's statements were material. The defendant did not object to that instruction, and the jury returned a verdict of guilty. On appeal, however, the defendant argued that the trial judge's failure to submit materiality to the jury rendered her conviction invalid under *United States* v. *Gaudin, supra,* 515 U.S. 506, a decision in which the United States Supreme Court had held, after the trial in *Johnson,* that the materiality of a false statement must be submitted to the jury rather than decided by the trial judge. Because the defendant had not objected to the instruction in the district court, however, rule 52(b) of the Federal Rules of Criminal Procedure (18 U.S.C.) precluded reversal unless the district court's instruction constituted "plain error" that "affect[ed] substantial rights" and " ' " ' 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " ' " (*Johnson* v. *United States, supra,* 520 U.S. at p. 467 [117 S.Ct. at p. 1549, 137 L.Ed.2d at p. 727].)

After first concluding that the instructional error was "plain," *Johnson* considered the defendant's argument that the error also affected "substantial rights" because the failure to submit an element of the offense to the jury is structural error. The court responded: "A 'structural error,' we explained in *Arizona* v. *Fulminante,* is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself,' 499 U.S., at 310. We have found structural errors only in a very limited class of cases: See *Gideon* v. *Wainwright,* 372 U.S. 335 (1963) (a total deprivation of the right to counsel); *Tumey* v. *Ohio,* 273 U.S. 510 (1927) (lack of an impartial trial judge); *Vasquez* v. *Hillery,* 474 U.S. 254 (1986) (unlawful exclusion of grand jurors of defendant's race); *McKaskle* v. *Wiggins,* 465 U.S. 168 (1984) (the right to self-representation at trial); *Waller* v. *Georgia,* 467 U.S. 39 (1984) (the right to a public trial); *Sullivan* v. *Louisiana,* 508 U.S. 275 (1993) (erroneous reasonable-doubt instruction to jury). [¶] *It is by no means clear that the error here fits within this limited class of cases. Sullivan* v. *Louisiana,* the case most closely on point, held that the erroneous definition of 'reasonable doubt' vitiated all of the jury's findings because one could only speculate what a properly charged jury might have done. *Id.,* at 280. *The failure to submit materiality to the jury, as in this case, can just as easily be analogized to improperly instructing the jury on an element of the offense* [citing *Yates, Carella, Pope,* and *Rose,* all *supra*], *an error which is subject to harmless-error analysis, as it can be to failing to give a proper reasonable-doubt instruction altogether.* Cf. *California* v. *Roy,* 519 U.S. 2, 5 [136 L.Ed.2d [266], 117 S.Ct. [337]] (1996) ('The specific error at issue here—an error in the instruction that defined the crime—is . . . as easily characterized as a "misdescription of an element" of the crime, as it is

characterized as an error of "omission" ')." (*Johnson* v. *United States, supra,* 520 U.S. at pp. 468-469 [117 S.Ct. at pp. 1549-1550, 137 L.Ed.2d at p. 728], italics added.)[18] After providing the above explanation, the court in *Johnson* ultimately concluded that it was unnecessary to· resolve definitively the structural error issue, because it concluded that the materiality instruction did not "seriously affect . . . the fairness, integrity or public reputation of judicial proceedings" and therefore did not require reversal. (*Id.* at pp. 469-470 [117 S.Ct. at p. 1550, 137 L.Ed.2d at p. 729].) In reaching the latter conclusion, the court observed that the evidence supporting materiality was overwhelming and essentially uncontroverted at trial and on appeal, and that the defendant had presented no plausible argument that her false statement somehow was not material. *Johnson* concluded: "On this record there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' Indeed, it would be the reversal of a conviction such as this which would have that effect. 'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.' [Citation.] No 'miscarriage of justice' will result here if we do not notice the error, [citation], and we decline to do so." (*Ibid.*)

Although *Johnson* did not decide whether the materiality instruction amounted to structural error, we agree with the Attorney General's position that *Johnson* suggests that an instruction to the jury that an element of the crime has been established generally is not reversible per se. A recent California Court of Appeal decision reached the same conclusion with regard to the meaning and effect of the United States Supreme Court's decision in *Johnson*. In *People* v. *Early* (1997) 56 Cal.App.4th 753 [65 Cal.Rptr.2d 527], the defendant was charged with first degree burglary, which requires that the structure entered be "an inhabited dwelling house." When instructing the jury on the elements of burglary, the trial court stated that the particular house entered by the defendant qualified as a dwelling house within the meaning of the statute, and that the jury did not have to "'worry about the kind of structure.' " (*Id.* at p. 756.) The Court of Appeal concluded that the trial court's instruction directed a partial verdict upon an element of first degree burglary and thus amounted to constitutional error. Relying primarily upon *Johnson*, the court held that the error was subject to harmless error analysis: "In the present case, as in *Johnson*, the evidence was uncontroverted at trial, and is not challenged on this appeal, that the structure entered was an 'inhabited dwelling house.' As in *Johnson*, the same error occurred: In *Johnson*, the trial court removed the element of 'materiality' from the jury's consideration; here, the trial court removed the element

---

[18]Justice Scalia did not join this portion of the opinion that discussed defendant's structural error argument, although he did not write separately. (*Johnson* v. *United States, supra*, 520 U.S. at p. 463, fn. * [117 S.Ct. at p. 1547, 137 L.Ed.2d at p. 727].)

of 'inhabited dwelling house' from the jury's consideration. In *Johnson*, upon a review of the record, the court concluded that the error was not one that ' " ' 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " ' [Citation.] Application of this standard is wholly inconsistent with a reversible per se rule." (*People* v. *Early, supra,* 56 Cal.App.4th at p. 760, fn. omitted.) The Court of Appeal went on to find that the instructional error was harmless, because the record demonstrated that no reasonable juror could have found that the structure entered by defendant was anything other than an inhabited dwelling house. (*Ibid.*)[19]

Defendant argues that *Early* is mistaken in its premise that application of the plain error doctrine is inconsistent with a rule of reversible-per-se error. According to defendant, *Johnson* is based solely upon the federal procedural rule that a failure to object in the district court may result in a waiver of constitutional rights—even rights that otherwise might lead to automatic reversal. We agree that *Johnson*'s holding is based upon a procedural rule, but the applicable rule required the court to consider whether the error seriously affected the fairness or integrity of judicial proceedings. *Early* correctly determined that *Johnson*'s conclusion that the error did *not* seriously affect the "integrity" or "fairness" of the trial is inconsistent with the view that the error affected the structural integrity of the trial process (*Arizona* v. *Fulminante, supra,* 499 U.S. at pp. 309-310 [111 S.Ct. at pp. 1264-1265]) or rendered the trial fundamentally unfair (*Rose* v. *Clark, supra,* 478 U.S. at p. 577 [106 S.Ct. at pp. 3105-3106]) so as to require automatic reversal for structural error. Defendant also attempts to distinguish *Johnson* on the ground that the law existing at the time of the trial in *Johnson* did not require the jury to determine materiality, whereas in this case existing law required an instruction on the peace officer component of the crime. Defendant cites no authority, however, suggesting that the significance of an error that removes an element of an offense from the jury's consideration differs depending upon whether the law at the time of trial required that element to be submitted to the jury. In either situation, the error precludes the jury from deciding an essential element of the crime and thus violates the defendant's due process rights, and the effect upon the structural integrity and fairness of the trial process is the same.

█ The foregoing United States Supreme Court decisions lead us to conclude that an instructional error that improperly describes or omits an

---

[19]Cf. *People* v. *DeSantis* (1992) 2 Cal.4th 1198, 1224-1225 and footnote 9 [9 Cal.Rptr.2d 628, 831 P.2d 1210] (no error occurred where burglary instruction failed to require jury to find that the structure entered by defendant was a "building," because only one type of structure—a house—was shown by the evidence, and no rational trier of fact could have found that a house was not a building; even if error occurred, it was harmless under *Chapman* because the defendant admitted that element of the offense).

element of an offense, or that raises an improper presumption or directs a finding or a partial verdict upon a particular element, generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution. Indeed, the high court never has held that an erroneous instruction affecting a single element of a crime will amount to structural error (see *U.S.* v. *North* (D.C. Cir. 1990) 910 F.2d 843, 893 [285 App.D.C 343], superseded in part on other grounds, 920 F.2d 940), and the court's most recent decisions suggest that such an error, like the vast majority of other constitutional errors, falls within the broad category of trial error subject to *Chapman* review.

We have no occasion in this case to decide whether there may be some instances in which a trial court's instruction removing an issue from the jury's consideration will be the equivalent of failing to submit the entire case to the jury—an error that clearly would be a "structural" rather than a "trial" error. (See *Rose* v. *Clark, supra,* 478 U.S. at pp. 577-578 [106 S.Ct. at pp. 3105-3106] [total deprivation of the right to a jury trial is structural error].)[20] Contrary to defendant's argument that the peace officer instruction resulted in a total deprivation of his right to a jury trial, nothing concerning the trial court's error takes it outside the category of ordinary trial error whose prejudicial effect may be assessed in light of the entire record. Unlike the deficient reasonable doubt instruction in *Sullivan,* which undermined each and every finding underlying the guilty verdict, the peace officer instruction in the present case affected only one aspect of one of the eight elements of the offense defined in section 2800.3. Like the directed finding on materiality in *Johnson,* the trial court's instruction that Bridgeman and Gurney were peace officers was based upon overwhelming and uncontradicted evidence, and defendant has made no attempt, either in the trial court or on appeal, to argue that the officers were not peace officers. Furthermore, unlike the directed finding regarding materiality considered in *People* v. *Kobrin, supra,* 11 Cal.4th at pages 429-430, the instructional error in the case before us did not prevent defendant from presenting evidence concerning a contested element of the crime.[21] Accordingly, the error did not affect the content of the record and does not impair our ability to evaluate the error in light of the record. (*Rose* v. *Clark, supra,* 478 U.S. at p. 579, fn. 7 [106 S.Ct. at p.

[20]Cf. *Sullivan* v. *Louisiana, supra,* 508 U.S. at page 281 [113 S.Ct. at pages 2082-2083] (deficient reasonable doubt instruction "vitiates *all* the jury's findings"); *People* v. *Cummings, supra,* 4 Cal.4th 1233, 1315 (no instructions on "substantially all" of the elements of an offense); *Harmon* v. *Marshall* (9th Cir. 1995) 69 F.3d 963, 966 (instructional error removing all elements of the crime from the jury's consideration).

[21]Therefore, defendant's reliance upon *Kobrin* is misplaced. *Kobrin* emphasized that the case did not decide "whether, and under what other circumstances, a reviewing court may determine the omission of [an] instruction on an element was harmless beyond a reasonable doubt." (11 Cal.4th at p. 428, fn. 8.)

3107].) Moreover, the materiality issue removed from the jury's consideration in *Johnson* and *Kobrin* had much greater relevance to the defendant's culpability than did the peace officer issue in this case. The trial court's removal of the uncontested peace officer component from the jury's consideration cannot be considered to have rendered defendant's trial fundamentally unfair or prevented the trial from reliably serving its function as the means for determining defendant's guilt or innocence. Nor did the trial court's action affect the framework within which the trial proceeded. The instructional error was not structural and is not reversible per se.

## C

Having decided that the trial court's instructional error is amenable to harmless error analysis, we proceed to consider whether it appears beyond a reasonable doubt that the error did not contribute to this jury's verdict. (*Yates* v. *Evatt*, *supra*, 500 U.S. at pp. 402-403 [111 S.Ct. at pp. 1892-1893]; *Chapman* v. *California*, *supra*, 386 U.S. at p. 24 [87 S.Ct. at p. 828].)

One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element. (*Connecticut* v. *Johnson*, *supra*, 460 U.S. at p. 87 [103 S.Ct. at pp. 977-978]; *U.S.* v. *Rogers* (11th Cir. 1996) 94 F.3d 1519, 1526-1527; see *Carella* v. *California*, *supra*, 491 U.S. 263, 270 [109 S.Ct. 2419, 2423] (conc. opn. of Scalia, J.) [automatic reversal is not required if an improper conclusive presumption affected an "element of the crime that the defendant in any case admitted"].)[22] In *Rogers*, *supra*, 94 F.3d 1519, the Eleventh Circuit Court of Appeals held that a district court's failure to instruct the jury on one element of an offense was harmless error where the defendant's testimonial admission at trial was sufficient to establish that element.[23] Although defendant in the present case did not affirmatively admit—through testimony or by stipulation, for example—that Bridgeman and Gurney were peace officers, several circumstances indicate that defendant effectively conceded this issue. As noted above, the record indicates that defendant requested the CALJIC instruction that included the

[22]See also *People* v. *Richie*, *supra*, 28 Cal.App.4th 1347, 1359-1360 (where defendant pursued a trial strategy of conceding guilt on a lesser offense to obtain acquittal on others, failure to instruct on uncontested element of the lesser offense is not reversible); *People* v. *Lopez* (1986) 188 Cal.App.3d 592, 600-603 [233 Cal.Rptr. 207] (failure to instruct jury that it must be proved that defendant knew he was being pursued by peace officer did not require automatic reversal, because defendant effectively conceded the point by arguing that he fled the police because of his involvement in an earlier altercation).

[23]The United States Supreme Court granted a petition for writ of certiorari in *Rogers*, but, after hearing oral argument, dismissed certiorari as improvidently granted on the ground that the issue was not presented properly. (*Rogers* v. *United States* (1998) 522 U.S. 252 [118 S.Ct. 673, 139 L.Ed.2d 686].)

optional, bracketed phrase instructing the jury that the officers were peace officers, and nothing in the record suggests that he objected to the trial court's informing the jury that Bridgeman and Gurney were peace officers. Defendant never referred to this element of the crime during the trial and did not argue to the jury that the prosecution had failed to prove this element beyond a reasonable doubt; indeed, he did not ask that the issue even be considered by the jury. Furthermore, defendant presented no evidence regarding the peace officer element, and failed to dispute the prosecution's evidence regarding the issue. Although a defendant's tactical decision not to "contest" an essential element of the offense does not dispense with the requirement that the jury consider whether the prosecution has proved every element of the crime (see *Estelle* v. *McGuire, supra,* 502 U.S. at p. 69 [112 S.Ct. at pp. 480-481]), in our view defendant's actions described above are tantamount to a concession that Bridgeman and Gurney were peace officers.

Furthermore, not only did defendant, by his conduct at trial, effectively concede that Bridgeman and Gurney were peace officers, but in view of the actual verdict returned by the jury in this case there is no reasonable or plausible basis for finding that the instructional error affected the jury's verdict. The verdict demonstrates that the jury resolved every contested issue in favor of the prosecution and, in particular, credited the testimony of all of the witnesses who testified regarding Bridgeman's and Gurney's status as peace officers. On the only issue related to the "peace officer" issue that defendant actually contested, the jury rejected defendant's contention and found that the motor vehicle in which the officers were driving was "distinctively marked." In addition, the jury also necessarily found, under the instructions, that the officers were wearing "distinctive" uniforms. Moreover, because the peace officer requirement is an expressly enumerated element of the crime, defendant does not (and could not) contend that he lacked notice of the element or that he did not have a full opportunity to present any evidence relevant to the issue. Finally, as we have discussed above, *all* of the evidence at trial relevant to the issue in question indicated that Bridgeman and Gurney were peace officers, and thus there is no rational basis upon which the instructional error could have affected the jury's verdict. Given all of these circumstances, we are satisfied that the record establishes beyond a reasonable doubt that the trial court's instructional error on the peripheral peace officer issue did not contribute to the jury's guilty verdict and thus must be found harmless under the *Chapman* standard.

In reaching this conclusion, we note that the circumstances of the present case also fall within the *Cantrell-Thornton* exception to reversible error as articulated in this court's prior decision in *People* v. *Garcia, supra,* 36 Cal.3d at page 556. As explained previously, we concluded in *Garcia* that

under the then controlling federal decisions it appeared that when a trial court commits federal constitutional error in removing an element of an offense from the jury's consideration, the error may be found harmless, for federal constitutional purposes, in circumstances in which the parties recognized the omitted element was at issue, presented all evidence at their command on that issue, and the record not only establishes the element as a matter of law but shows the contrary evidence not worthy of consideration. All of the requirements of the *Cantrell-Thornton* exception are clearly satisfied in this case, and in fact we are faced here with no contrary evidence at all. Although, as we have discussed above, United States Supreme Court decisions handed down since *Garcia* have provided additional guidance for assessing prejudice arising from such instructional errors, the United States Supreme Court never has overturned a decision affirming a judgment on the basis of the *Cantrell-Thornton* exception. This circumstance provides further support for our conclusion that the instructional error in question may be found nonprejudicial under the governing *Chapman* standard.

Relying on language in a number of high court decisions, defendant contends that an instructional error removing an element from the jury's consideration *never* can be considered harmless unless the jury necessarily found the omitted element in connection with other findings required by the instructions, and he maintains that this requirement is not met in this case. (See, e.g., *Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at p. 2081] ["[T]he question . . . the reviewing court [must] consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. [Citation.] Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' "]; *Yates* v. *Evatt, supra,* 500 U.S. at p. 404 [111 S.Ct. at p. 1893] [in the case of an erroneous presumption, "the issue under *Chapman* is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption"]; *Pope* v. *Illinois, supra,* 481 U.S. at p. 503 [107 S.Ct. at p. 1922] [erroneous instruction was harmless because the jurors "were not precluded from considering" the improperly defined element, but rather were required to make an actual finding on the issue that could be assessed for prejudice under *Chapman*]; see also *Roy, supra,* 519 U.S. at p. 7 [117 S.Ct. at pp. 339-340, 136 L.Ed.2d at p. 272] (conc. opn. of Scalia, J.) [Instructional omission may be harmless "only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well."].) The cases upon which defendant relies, however, do not preclude a finding of harmless error when a defendant has admitted or conceded an issue at trial, and, unlike this case, none of the cases cited by defendant involved a

misinstruction on a peripheral issue that was never actually in dispute at trial and on which the evidence was totally uncontradicted. Furthermore, as we have explained above, we believe that the high court's very recent opinions in *Roy* and *Johnson*, rendered subsequent to the decisions cited by defendant, indicate that such an error may be found harmless in circumstances, such as those presented in the case at bar, in which there is no possibility that the error affected the result.

■ As the United States Supreme Court has emphasized, " '[t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence [citation], and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ("Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it").' " (*Rose* v. *Clark, supra,* 478 U.S. at p. 577 [106 S.Ct. at p. 3105], quoting *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 681 [106 S.Ct. 1431, 1436, 89 L.Ed.2d 674]; cf. *People* v. *Cahill, supra,* 5 Cal.4th at pp. 508-509 [noting similar policies underlying the reversible error rule under the California Constitution].) ■ Under the circumstances of the present case, reversing defendant's conviction because of an instructional error concerning an uncontested, peripheral element of the offense, which effectively was conceded by defendant, was established by overwhelming, undisputed evidence in the record, and had nothing to do with defendant's own actions or mental state, would erode the purpose and rationale of the harmless error doctrine and promote disrespect for the judicial system.

## IV

We conclude that the trial court's error in instructing the jury that Bridgeman and Gurney were peace officers was harmless beyond a reasonable doubt. Accordingly, the judgment of the Court of Appeal is affirmed.

Baxter, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.**—I concur in the judgment of the majority affirming the decision of the Court of Appeal. The trial court clearly erred by instructing defendant's jury to find Officers Bridgeman and Gurney were peace officers within the meaning of Vehicle Code section 2800.3. I agree the error in this case was not "structural," as that term is used in *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182] (*Sullivan*), and *Arizona* v. *Fulminante* (1991) 499 U.S. 279 [111 S.Ct. 1246, 113 L.Ed.2d 302] (*Fulminante*), and thus is not automatically reversible for that reason under the

federal Constitution. (Maj. opn., *ante*, at p. 503.) I further agree with the majority that the error was harmless under the federal Constitution to the extent the majority arrives at this conclusion by applying the *Cantrell-Thornton*[1] exception to the rule of automatic reversal this court recognized in *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826] (*Garcia*). (Maj. opn., *ante*, at pp. 505-506.)

I respectfully disagree, however, with the holding or suggestion, contained in the majority opinion, that we may find the instructional error harmless on the theory the error concerned only a "peripheral" element of the charged crime, or that defendant conceded the issue at trial. As I explain, neither of these theories is legally supportable.

I.

The due process clauses of the Fifth and Fourteenth Amendments to the federal Constitution require the prosecution in a criminal case to prove "all elements of the offense charged [citations], and [to] persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements [citations]." (*Sullivan, supra*, 508 U.S. at pp. 277-278 [113 S.Ct. at p. 2080]; *Estelle* v. *McGuire* (1991) 502 U.S. 62, 69 [112 S.Ct. 475, 480-481, 116 L.Ed.2d 385]; *In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368].) "[A]lthough a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.]" (*Sullivan, supra*, at p. 277 [113 S.Ct. at p. 2080].)

Defendant Hal Lee Flood was charged with violating Vehicle Code[2] section 2800.3. That section incorporates section 2800.1, which defines the misdemeanor of willful flight or attempt to elude a pursuing peace officer while operating a motor vehicle. Section 2800.3 elevates the crime to a potential felony if the offender's actions proximately cause death or serious bodily injury. A statutory requirement for establishing a violation of section 2800.1, and hence section 2800.3, is that "[t]he peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 . . . of Title 3 of Part 2 of the Penal Code . . . ." (§ 2800.1, former subd. (d); now see § 2800.1, subd. (a)(4).)

As the majority notes, the trial court instructed the jury that "Officer Bridgeman and Officer Gurney are peace officers." Although there was

---

[1]*People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], overruled on other grounds by *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, footnote 5 [149 Cal.Rptr. 265, 583 P.2d 1308], and *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds by *People* v. *Flannel, supra*, at page 684, footnote 12.

[2]All code references are to the Vehicle Code unless otherwise stated.

evidence to this effect, and defendant did not present evidence or argument to contradict it, the instruction was erroneous because defendant was entitled to a jury determination of the existence of this element of the charged offense. Accordingly, the trial court's instruction violated defendant's due process rights under the federal Constitution. On this point, the court is unanimous.

Does the error require we reverse defendant's conviction? In *Fulminante, supra,* 499 U.S. 279, Chief Justice Rehnquist for the first time explained that certain serious trial errors require *automatic reversal* because such errors constitute a "structural defect" in the trial itself.[3] (See 499 U.S. at pp. 309-310 [111 S.Ct. at pp. 1264-1265] (opn. by Rehnquist, C. J.); see also *id.* at pp. 294-295 [111 S.Ct. at pp. 1256-1257] (dis. opn. of White, J.), quoting *Vasquez* v. *Hillery* (1986) 474 U.S. 254, 263 [106 S.Ct. 617, 623, 88 L.Ed.2d 598] [such errors undermine the " 'structural integrity' " of the trial].) Such errors are not amenable to a harmless error determination. (See *Yates* v. *Evatt* (1991) 500 U.S. 391, 402-403, fn. 8 [111 S.Ct. 1884, 1892, 114 L.Ed.2d 432] (*Yates*), overruled on another point by *Estelle* v. *McGuire, supra,* 502 U.S. at p. 72, fn. 4 [112 S.Ct. at p. 482] [*Yates* holding to the extent *Rose* v. *Clark* (1986) 478 U.S. 570 [106 S.Ct. 3101, 92 L.Ed.2d 460] suggested an improper rebuttable presumption could be cured by evidence in the record establishing guilt beyond a reasonable doubt, it "would not be correct"].) Errors reversible irrespective of the strength of the evidence of guilt include trial with a biased judge, complete denial of counsel, denial of *Faretta*[4] rights, denial of a public trial, and indictment by a grand jury from which the defendant's race was excluded. (*Fulminante, supra,* 499 U.S. at pp. 309-310 [111 S.Ct. at pp. 1264-1265].) Instructing the jury with an instruction that inadequately defines the concept of reasonable doubt is also a structural error requiring reversal irrespective of the strength of the evidence. (*Sullivan, supra,* 508 U.S. 275.)

Although I agree with the majority the error in this case was not structural, I do not join the entirety of the majority's reasoning. Specifically, I disagree with the majority that we may draw as much as the majority indicates from

---

[3]*Fulminante* was itself a confusing case. Justice White wrote parts I, II, and IV for the court, finding the defendant's confession was coerced and that its admission could not be found harmless. In part III, White held that such error was automatically reversible. Chief Justice Rehnquist wrote a separate opinion in which a majority of five justices found the admission of a coerced confession was subject to the *Chapman* harmless error test. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (*Chapman*).) Fewer than a majority of justices, however, agreed with Chief Justice Rehnquist that the error was harmless under that test. Thus, a majority found the confession was coerced, that it was error to admit it, that the error was subject to *Chapman*, and that the error did not pass the *Chapman* test (i.e., the error was prejudicial).

[4]*Faretta* v. *California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562].

*California* v. *Roy* (1996) 519 U.S. 2 [117 S.Ct. 337, 136 L.Ed.2d 266] (*per curiam*), and *Johnson* v. *United States* (1997) 520 U.S. 461 [117 S.Ct. 1544, 137 L.Ed.2d 718]. As Justice Mosk explains in his dissenting opinion, *post,* at pages 536-537, neither case squarely poses the situation here, both are patently distinguishable, and, accordingly, neither case establishes a holding we are bound to follow. Although the majority concludes these cases "strongly indicate" (maj. opn., *ante,* at p. 497) or "suggest[]" (*id.* at p. 501) how the high court *would* hold if it were required to do so, that court has never so held. We are not bound by such "suggestions" in United States Supreme Court opinions, for in the absence of precedent, we have "an independent constitutional obligation to adjudicate the constitutional rights of litigants before [us]." (*People* v. *Monge* (1997) 16 Cal.4th 826, 856 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (dis. opn. of Werdegar, J.).) "We must decide the case before us based on constitutional principles, not predictions of what another court—even a higher court—may do if faced with a justiciable controversy." (*Id.* at p. 858.)

Although I thus disagree that an examination of *California* v. *Roy, supra,* 519 U.S. 2, and *Johnson* v. *United States, supra,* 520 U.S. 461, advances the analysis, I nevertheless agree the error here is not the type of structural error described by the high court in *Sullivan, supra,* 508 U.S. 275, and *Fulminante, supra,* 499 U.S. 279. *Fulminante* explains that certain trial errors require reversal without inquiry into the effect they have on a trial, because such errors constitute a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " (*Fulminante, supra,* at p. 310 [111 S.Ct. at p. 1265], quoting *Rose* v. *Clark, supra,* 478 U.S. at pp. 577-578 [106 S.Ct. at pp. 3105-3106].) In other words, structural errors require reversal because their effect may not be "quantitatively assessed" (*Fulminante, supra,* at pp. 307-308 [111 S.Ct. at pp. 1263-1264]) by a comparison to other evidence admitted at trial. (See generally, *Sullivan, supra,* at pp. 281-282 [113 S.Ct. 2082-2083]; *People* v. *Harris* (1994) 9 Cal.4th 407, 429 [37 Cal.Rptr.2d 200, 886 P.2d 1193] [Misinstruction "on one of two possible factual theories by which [the immediate presence] element [of robbery] could be satisfied" does not constitute structural error. (Italics omitted.)].)

The instructional error here seems different in kind and degree from the types of errors the high court has found require automatic reversal, for instructing the jury that Officers Bridgeman and Gurney were peace officers within the meaning of the statute was done by an impartial judge; defendant

was represented by competent counsel; defendant was afforded an impartial jury; and the impact of the error on the jury's decisionmaking may be assessed. In other words, directing a verdict on one element of several required to establish a criminal offense "neither wholly withdrew from jury consideration substantially all of the elements of a charged substantive offense [citations], nor so vitiated all of the jury's findings as to effectively deny defendant[] a jury trial altogether." (*People* v. *Wims* (1995) 10 Cal.4th 293, 312 [41 Cal.Rptr.2d 241, 895 P.2d 77], fn. omitted; but see *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 et seq. [18 Cal.Rptr.2d 796, 850 P.2d 1] [failing to instruct on four of five elements of robbery reversible per se].) In short, the error in this case did not undermine the basic integrity of the structure of the trial process.

The only argument in defendant's favor is that he was entitled to a *jury decision* on whether every element of a charged crime is true. Such an argument, though perhaps attractive in the abstract, is, however, at odds with the numerous cases in which the high court has found various trial errors subject to a harmless error test. (See collected cases in Chief Justice Rehnquist's separate opinion in *Fulminante, supra,* 499 U.S. at pp. 306-307 [111 S.Ct. at pp. 1262-1263].) In particular, the error in this case seems no more "structural" than erroneously instructing the jury it may employ an unconstitutional, conclusive presumption to establish an element of an offense, an error that is subject to a harmless error test. (See *Carella* v. *California* (1989) 491 U.S. 263 [109 S.Ct. 2419, 105 L.Ed.2d 218].) Accordingly, I conclude the error in this case was not a structural error requiring reversal.[5]

Although the error here was not structural, the trial court nevertheless violated defendant's rights under the federal due process clauses by failing to instruct the jury on all elements of the charged offense. The applicable test for prejudice for nonstructural federal constitutional error is set forth in *Chapman, supra,* 386 U.S. 18. That case provides that federal constitutional error requires reversal unless the People can prove the error was harmless beyond a reasonable doubt. (*Id.* at p. 24 [87 S.Ct. at p. 828].)

Recent opinions of the high court have discussed the meaning of the *Chapman* test, refining the terms of its application. Thus, in *Yates, supra,* 500 U.S. 391, the defendant's jury was instructed it could presume the

---

[5]Curiously, the most recent case to *directly* address the structural error issue (*Sullivan, supra,* 508 U.S. 275) seems to relegate the discussion of structural error to an alternative analysis. (*Id.* at p. 281 [113 S.Ct. at p. 2082] [Structural error analysis provides "[a]*nother mode of analysis* lead[ing] to the same conclusion that harmless-error analysis does not apply . . . ." (Italics added.)].) This treatment of the *Fulminante* "structural error" analysis as a subordinate analysis may signal the high court's dissatisfaction with the structural error approach.

existence of malice if the defendant either willfully and intentionally engaged in an unlawful act without just cause or excuse, or if the defendant used a deadly weapon. Both presumptions were rebuttable under state law. (*Id.* at p. 397 [111 S.Ct. at pp. 1889-1890].) The South Carolina Supreme Court found the use of the rebuttable presumptions violated the defendant's federal constitutional rights, but concluded the error was harmless. The state court reached this conclusion by reweighing the evidence and finding the brutal nature of the slaying would have made it unnecessary for the jury to rely on the presumptions to find malice. (*Id.* at pp. 399-400 [111 S.Ct. at pp. 1890-1891].)

The United States Supreme Court reversed. The high court explained that, although the state supreme court was correct in concluding this type of error was subject to a harmless error test, it nevertheless applied the wrong standard of review. "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates, supra,* 500 U.S. at p. 403 [111 S.Ct. at p. 1893].) To make that determination, the court stated a reviewing court "must take two quite distinct steps. First, it must ask what evidence the jury actually considered in reaching its verdict." (*Id.* at p. 404 [111 S.Ct. at p. 1893].) Second, the court "must then weigh the probative force of that evidence as against the probative force of the presumption standing alone. To satisfy *Chapman*'s reasonable-doubt standard, it will not be enough that the jury considered evidence from which it *could have* come to the verdict without reliance on the presumption. Rather, the issue under *Chapman* is whether the jury *actually rested* its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions *is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption.* It is only when the effect of the presumption is comparatively minimal to this degree that it can be said, in *Chapman*'s words, that the presumption did not contribute to the verdict rendered." (*Id.* at. pp. 404-405 [111 S.Ct. at pp. 1893-1894], italics added.)

The South Carolina Supreme Court had concluded the error was harmless because the evidence of malice was so strong the jury would have found it unnecessary to rely on the improper presumption. (*Yates, supra,* 500 U.S. at p. 407 [111 S.Ct. at p. 1895].) This was erroneous, explained the high court, because "[e]nquiry about the necessity for reliance . . . does not satisfy all of *Chapman*'s concerns. It can tell us that the verdict *could have been the*

*same* without the presumptions, where there was evidence sufficient to support the verdict independently of the presumptions' effect. *But the enquiry will not tell us whether the jury's verdict did rest on that evidence* as well as on the presumptions, or whether that evidence was of such compelling force as to show beyond a reasonable doubt that the presumptions must have made no difference in reaching the verdict obtained." (*Ibid.*, italics added.)

In short, in applying the *Chapman* test to determine whether a nonstructural federal constitutional error is harmless, an appellate court cannot simply reweigh the evidence to conclude *a hypothetical reasonable jury* would have found the existence of the missing element. Instead, the pertinent question is whether an examination of the record in *this case* indicates *this jury* would have found the missing element.

That this is the proper approach to *Chapman* review was underscored by the high court's opinion in *Sullivan, supra,* 508 U.S. 275. In that case, the trial court failed adequately to define for the jury the meaning of the phrase "reasonable doubt." (*Id.* at p. 277 [113 S.Ct. at p. 2080].) The Supreme Court of Louisiana found the error harmless beyond a reasonable doubt. The high court reversed, explaining that the proper "inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict *actually rendered* in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—*no matter how inescapable the findings to support that verdict might be*—would violate the jury-trial guarantee." (*Id.* at p. 279 [113 S.Ct. at pp. 2801-2802], italics added, original italics omitted.)

The court continued: "Once the proper role of an appellate court engaged in the *Chapman* inquiry is understood, the illogic of harmless-error review in the present case becomes evident. Since . . . there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt— not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been* different absent the constitutional error. That is not enough." (*Sullivan, supra,* 508 U.S. at p. 280 [113 S.Ct. at p. 2082], italics in original.)

Applying *Yates* and *Sullivan* to the present case is problematic. *Yates* involved an unconstitutional evidentiary presumption and *Sullivan* involved a faulty reasonable doubt instruction. Accordingly, neither authoritatively explains how we should apply the *Chapman* test to a case, as here, where the trial court delivered what in essence was a directed verdict on one element of a criminal offense. What is clear from *Yates* and *Sullivan* is that for an appellate court simply to reweigh the evidence presented at trial and determine whether a hypothetical reasonable jury *would have found* the existence of the missing element is impermissible. Beyond that, the effect of *Yates* and *Sullivan* on this case is unclear. It is true there was evidence Officers Bridgeman and Gurney were peace officers within the meaning of section 2800.1, and defendant did not present any contrary evidence or argument. But because the jury was not asked to determine whether the peace officer requirement was satisfied, rigidly applying the *Yates/Sullivan* interpretation of *Chapman* would, as Justice Mosk argues in dissent, require we reverse defendant's conviction.

We have never, however, applied the federal harmless error test in such a rigid fashion. Thirteen years ago, we addressed the precise question posed here: How should an appellate court evaluate the prejudice flowing from a trial court's failure to instruct the jury on all elements of an offense? In *Garcia, supra,* 36 Cal.3d 539, we confronted a case in which the jury instructions did not require a finding of intent to kill to sustain a felony-murder special circumstance.[6] (Intent to kill was then a requirement for a felony-murder special circumstance; the requirement has since been removed. See *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306].) After examining several high court opinions, we concluded the general rule required reversal, explaining that "[t]he United States Supreme Court decisions make it clear that when intent is an element of a crime, an instruction directing the jury to find or conclusively presume intent denies due process, regardless of the weight of the evidence." (*Garcia, supra,* at p. 551.)

Reading the plurality opinion in *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [103 S.Ct. 969, 74 L.Ed.2d 823], we found the high court would recognize two exceptions to the general rule of reversal per se. First, a jury instruction removing from the jury's consideration an element of the offense could be deemed harmless " 'if the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the

---

[6]We rejected the People's contention that a defendant's due process right to have his or her jury instructed on the elements of a special circumstance allegation was less important for constitutional purposes than the right to have instructions on elements of a crime. (*Garcia, supra,* 36 Cal.3d at p. 552.)

instruction had no bearing on the offense for which he was convicted,' and [second,] 'if the defendant conceded the issue of intent.' " (*Garcia, supra*, 36 Cal.3d at pp. 554-555, quoting *Connecticut* v. *Johnson, supra*, at p. 87 [105 S.Ct. at pp. 977-978].)

Nothing in the post-*Garcia* decisions of the United States Supreme Court suggests that court would now decline to recognize these two exceptions. Indeed, both are consistent with the test for harmless error as explained in *Yates, supra*, 500 U.S. 391, and *Sullivan, supra*, 508 U.S. 275, i.e., both exceptions address "whether the guilty verdict actually rendered in this trial was surely unattributable to the [instructional] error." (*Sullivan, supra*, 508 U.S. at p. 279 [113 S.Ct. at p. 2081], italics omitted.) Where a defendant is acquitted of the crime, or concedes at trial the existence of the missing element, we can be sure the guilty verdict actually rendered was unaffected by the instructional error. In other words, in such a situation, an appellate court can conclude not only that a *reasonable jury* would surely have convicted, but that *this jury* would have done so.

The first *Garcia* exception is inapplicable here, for defendant was convicted, not acquitted, of violating section 2800.3. So too, in my view, is the second exception inapplicable. Contrary to the majority opinion, I disagree defendant conceded Bridgeman and Gurney were peace officers within the meaning of section 2800.1. (See maj. opn., *ante*, at pp. 504 ["defendant *effectively conceded* this issue" (italics added)], 505 ["defendant's actions . . . are *tantamount to a concession* that Bridgeman and Gurney were peace officers" (italics added)], 507 [issue "effectively was conceded by defendant"].) Neither defendant nor his attorney ever stated they were admitting or conceding the issue. More importantly, defendant pleaded not guilty, thereby placing in dispute every issue necessary to obtain a criminal conviction. (*People* v. *Rowland* (1992) 4 Cal.4th 238, 260 [14 Cal.Rptr.2d 377, 841 P.2d 897]; Pen. Code, § 1019 ["The plea of not guilty puts in issue every material allegation of the accusatory pleading . . . ."].) A defendant is entitled to sit back and force the People to prove beyond a reasonable doubt every element of a charged crime, and the People's burden is not diminished should a defendant decline to mount a vigorous defense.[7]

Although defendant was neither acquitted of nor conceded the issue, *Garcia, supra*, 36 Cal.3d 539, noted two additional exceptions to the rule of

---

[7]Nor can I join the majority's alternate rationale that the "peace officer" requirement was merely a "peripheral" element (maj. opn., *ante*, at pp. 505, 506, 507) that is deserving of somewhat less due process protection under *In re Winship, supra*, 397 U.S. 358, and its progeny. The majority not only fails to provide any legal justification for this approach, it fails to explain how courts can determine whether statutory elements of criminal offenses are "peripheral" or "core" requirements. Peripheral or not, had the People failed to present *any* evidence at all on the "peace officer" element, it would violate defendant's due process rights under both the federal and state Constitutions for an appellate court to conclude the error was

automatic reversal. Relying on *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People* v. *Flannel, supra,* 25 Cal.3d at page 684, footnote 12, "we explained that 'in some circumstances it is possible to determine that although an instruction . . . was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant . . . .' " (*Garcia, supra,* at p. 555, fn. omitted.)[8] Because the jury was instructed that Bridgeman and Gurney were qualifying peace officers, the jury did not determine this fact at all. Accordingly, the *Sedeno* exception does not apply here.

The fourth *Garcia* exception drew on our decisions in *People* v. *Cantrell, supra,* 8 Cal.3d 672, and *People* v. *Thornton, supra,* 11 Cal.3d 738. After describing those opinions, we explained in *Garcia, supra,* 36 Cal.3d at page 556, that even when the jury instructions omit a required element of a charged crime, "there may . . . be cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration. In such a case the reasoning of *Cantrell* and *Thornton* may avoid a meaningless retrial." (Fn. omitted.)

Since *Garcia,* we have recognized the continuing viability of the *Cantrell-Thornton* exception, even while finding the exception inapplicable on the

harmless. To the extent the majority holds the importance of the "peace officer" requirement is relevant to the determination of prejudice (see also maj. opn., *ante,* at pp. 492 [characterizing the "peace officer" requirement as merely a "component" of a statutory element of the offense], 503 [error "affected only one aspect of one of the eight elements of the offense"]), I disagree and do not join that discussion.

[8]We continued in *Garcia,* stating, "[w]e believe that, in an appropriate case, the United States Supreme Court would accept this exception to the automatic reversal standard." (*Garcia, supra,* 36 Cal.3d at p. 555.) Since *Garcia,* the high court appears to have recognized a similar, though not identical, exception. Speaking of a situation in which the jury is erroneously instructed that it may apply a conclusive presumption to establish an element of a crime, the court opined that, in that situation, the jury must still determine predicate facts before applying the presumption. "And when [these facts] 'are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is *functionally equivalent* to finding the element required to be presumed.' [Citations.] A reviewing court may thus be able to conclude that the presumption played no significant role in the finding of guilt beyond a reasonable doubt." ·(*Sullivan, supra,* 508 U.S. at p. 281 [109 S.Ct. at pp. 2423-2424], italics added, quoting *Carella* v. *California, supra,* 491 U.S. at p. 271 [113 S.Ct. at p. 2082] (conc. opn. of Scalia, J.).)

facts of a particular case. (See, e.g., *People* v. *Hamilton* (1985) 41 Cal.3d 408, 432 [221 Cal.Rptr. 902, 710 P.2d 981]; *People* v. *Silbertson* (1985) 41 Cal.3d 296, 307 [221 Cal.Rptr. 152, 709 P.2d 1321].) The lower appellate courts, however, have on several occasions invoked the exception in affirming convictions despite a failure to instruct the jury on an element of an offense. (*People* v. *Richie* (1994) 28 Cal.App.4th 1347, 1354-1360 [34 Cal.Rptr.2d 200]; *People* v. *Riederer* (1990) 217 Cal.App.3d 829, 836 [266 Cal.Rptr. 355]; *People* v. *Joiner* (1988) 204 Cal.App.3d 221, 227 [251 Cal.Rptr. 63]; *People* v. *Jarrell* (1987) 196 Cal.App.3d 604, 611 [242 Cal.Rptr. 219]; see *People* v. *Beltran* (1989) 210 Cal.App.3d 1295, 1308 [258 Cal.Rptr. 884] [failure to instruct on element of enhancement found harmless].)

At the time we decided *Garcia*, we confessed to uncertainty "whether the United States Supreme Court [would] endorse the *Cantrell-Thornton* exception to its apparent rule favoring automatic reversal [for failure to instruct on an element of a criminal offense]." (*Garcia, supra*, 36 Cal.3d at p. 556.) We noted that certain language in *Connecticut* v. *Johnson, supra*, 460 U.S. 73, "suggests that four justices of the court would be sympathetic to a limited exception that would avoid retrial in some cases in which the evidence unequivocally and conclusively established intent, but leaves it uncertain whether a majority would take that position. Accordingly, *pending further guidance from the United States Supreme Court*, we will apply the reasoning of *Cantrell* and *Thornton* only to those cases clearly falling within the ambit of that reasoning so as not to detract substantially from the per se character of the high court's rule." (*Garcia, supra*, at p. 556, italics added.)

Of course, since *Garcia*, the high court has touched on this general subject many times, most notably in *Carella* v. *California, supra*, 491 U.S. 263, *Yates, supra*, 500 U.S. 391, and *Sullivan, supra*, 508 U.S. 275. These cases make no mention of the *Cantrell-Thornton* exception, although they proceed from the premise that the omission from the jury instructions of one element of an offense can be harmless on the facts of a particular case. Thus, as previously indicated, the high court has explained the error is harmless when the defendant concedes the issue or is acquitted of the offense for which the omitted fact was relevant, or when an improper evidentiary presumption requires the jury to find predicate facts " 'so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is *functionally equivalent* to finding the element required to be presumed.' " (*Sullivan, supra*, 508 U.S. at p. 281 [113 S.Ct. at p. 2082], italics added, quoting *Carella* v. *California, supra*, 491 U.S. at p. 271 [109 S.Ct. at pp. 2423-2424] (conc. opn. of Scalia, J.).) In such circumstances, in other words, there is no realistic

chance the defendant was actually harmed by the error. As the majority notes (maj. opn., *ante*, at p. 507), to reverse a judgment under such circumstances "would erode the purpose and rationale of the harmless error doctrine and promote disrespect for the judicial system."

Where the requirements of the *Cantrell-Thornton* exception exist, there similarly is no realistic chance the defendant was actually harmed by the error. Where (1) a criminal defendant knows (or should know) proof of a particular fact is important, (2) both parties present all the evidence at their disposal on the subject, and (3) an appellate court can conclude both that the fact is proved as a matter of law and the contrary evidence is unworthy of belief, the *Cantrell-Thornton* exception permits the conclusion the error was harmless because it had no realistic effect on the verdict. This conclusion is consistent with the other exceptions recognized both by this court and the high court, and nothing in *Carella*, *Yates*, or *Sullivan* is fatally at odds with recognition of this exception. (See also maj. opn., *ante*, at p. 506 ["the United States Supreme Court never has overturned a decision affirming a judgment on the basis of the *Cantrell-Thornton* exception"].) We opined in *Garcia*, *supra*, 36 Cal.3d at page 557, that we would apply the *Cantrell-Thornton* exception "pending further guidance from the United States Supreme Court," and we are still awaiting such guidance.

Accordingly, I conclude the *Cantrell-Thornton* exception is still a viable legal doctrine and thus agree with that part of the majority's opinion applying the exception in this case.

Section 2800.1 provides an element of the crime is that "[t]he peace officer's motor vehicle is operated *by a peace officer, as defined in Chapter 4.5 . . . of Title 3 of Part 2 of the Penal Code . . . .*" (§ 2800.1, former subd. (d); now see § 2800.1, subd. (a)(4), italics added.) Defendant was thus on notice that whether Bridgeman and Gurney were peace officers "as defined in Chapter 4.5 . . . of Title 3 of Part 2 of the Penal Code" was a material issue in the case. Because the "peace officer" requirement was a statutory one, neither defendant nor the People can claim they lacked the incentive to place in the record all the evidence they possessed on this issue. As the majority notes (maj. opn., *ante*, at p. 476), Officers Bridgeman and Gurney both testified they were employed by the Richmond Police Department.[9] Defendant did not cross-examine the witnesses on this point, nor present any other evidence relevant to the status of the officers. Accordingly, I agree with the majority that the record establishes as a matter of law that Bridgeman and Gurney were peace officers as required by section 2800.1, former

---

[9] Penal Code section 830.1, subdivision (a), which is located in "Chapter 4.5 . . . of Title 3 of Part 2 of the Penal Code," provides "Any . . . police officer, employed in that capacity and appointed by the chief of police or the chief executive . . . of a city . . . is a peace officer."

subdivision (d) (now subdivision (a)(4)), and that not only was the contrary evidence not worthy of belief, there was no contrary evidence at all. Under the *Cantrell-Thornton* exception, I agree with the majority that the instructional error in this case was harmless.

This conclusion is consistent with *People* v. *Richie, supra,* 28 Cal.App.4th 1347 (*Richie*), a case posing very similar facts. In *Richie,* the defendant was charged with violating section 2800.2, fleeing or evading a peace officer while driving in a motor vehicle "in a willful or wanton disregard for the safety of persons or property." Although one statutory requirement for this crime is the peace officer be "wearing a distinctive uniform," the defendant's jury was not instructed to find this element of the offense. The Court of Appeal found the instructional error harmless, reasoning: "The facts of the instant case place it squarely within the *Cantrell-Thornton* exception. Appellant can hardly claim not to have been on notice as to an expressly enumerated element of the offense charged. With respect to the evidence presented, the record is clear and uncontradicted on the question whether Officer Hardy was in uniform. The issue was raised only once: in his testimony on direct examination, Officer Hardy responded affirmatively to the prosecutor's question whether he was uniformed at the time he pursued appellant. There was no contradicting testimony or dispute by appellant on this element." (*Richie, supra,* at pp. 1355-1356.) "Under these circumstances, and considering that the element of the offense that is at issue was indisputably established by the evidence, reversal of appellant's conviction is not required by the principle of fundamental fairness." (*Id.* at p. 1360.)

Nor is this conclusion inconsistent with *People* v. *Kobrin* (1995) 11 Cal.4th 416 [45 Cal.Rptr.2d 895, 903 P.2d 1027] (*Kobrin*). In that case, the question of the materiality of a statement in a perjury prosecution was removed from the jury's consideration. The Attorney General argued the error was harmless because the jury " 'would have considered evidence pertinent to the issue of materiality, if not all the evidence establishing that fact.' " (*Id.* at p. 428.) We disagreed, explaining "the misinstruction here [was not] susceptible to this type of analysis." (*Ibid.*) Instead, we found the defendant's perjury conviction must be reversed after considering two circumstances.

"First, a reviewing court generally only evaluates the strength of the evidence considered by the jury in assessing the prejudicial effect of an impermissible burden-shifting presumption, which may have had a comparatively minimal impact on the verdict. By contrast, in most cases the complete omission of an element inevitably affects the verdict both directly and adversely. [Citing, inter alia, *Sullivan, supra,* 508 U.S. at p. 280 [124

L.Ed.2d at pp. 189-190], and *Yates, supra,* 500 U.S. at pp. 403-406 [114 L.Ed.2d at pp. 4448-4450].]" (*Kobrin, supra,* 11 Cal.4th at pp. 428-429.)

We continued: "Second, even if we could infer with any degree of certainty the jury's likely 'findings' under the instructions given, *we have no basis for determining the extent to which they reflect a consideration of whether defendant's false statements were material since the only reference to the issue specifically removed it from the deliberative process.*" (*Kobrin, supra,* 11 Cal.4th at p. 429, italics added.) In other words, if an element is completely removed from jury consideration, we cannot infer from the jury's other findings whether it considered evidence from which it actually did (or clearly would have) made the required finding. In short, any such conclusion would be impermissible factfinding by the appellate court.

Although *Kobrin* reversed the defendant's conviction for failure to instruct the jury to determine whether the challenged statements were material, we expressly declined to decide whether, and in what circumstances, "a reviewing court may determine the omission of instruction on an element [of a criminal offense] was harmless beyond a reasonable doubt." (*Kobrin, supra,* 11 Cal.4th at p. 428, fn. 8.) *Kobrin* thus explicitly reserved the question posed in the instant case. Significantly, *Kobrin* also explained that any application of a harmless error test when the jury instructions omit an element of the offense assumes the parties placed all relevant evidence at their disposal into the record, a doubtful proposition under the circumstances of that case. (*Kobrin, supra,* 11 Cal.4th at pp. 429-430 [defendant attempted to present evidence his statements were not material but the trial court ruled the evidence was inadmissible].) Thus, unlike in the instant case, it did not appear in *Kobrin* that "all possible evidence on the question of [the omitted fact] was actually presented to the trier of fact." (*Id.* at p. 429.)

Of course, the *Cantrell-Thornton* exception addresses this problem, as it requires the parties to have been aware the issue was a disputed one and have placed all their evidence into the record. Because we could not be sure the parties in *Kobrin* presented all relevant evidence on the issue, we could not rely on the *Cantrell-Thornton* exception. The same is not true in this case.

## II.

In sum, I concur in the majority opinion to the extent it relies on the *Cantrell-Thornton* exception to find the error in this case was harmless beyond a reasonable doubt.

**CHIN, J.**—I concur fully in the Chief Justice's opinion. The court's telling the jury that "Officer Bridgeman and Officer Gurney are peace officers,"

although error, clearly had no " 'effect on the judgment.' " (*Johnson* v. *United States* (1997) 520 U.S. 461, 470 [117 S.Ct. 1544, 1550, 137 L.Ed.2d 718].) That those two witnesses were peace officers was an easily verifiable, objective fact the defense did not and, no doubt, could not contest. The error did not " 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.' Indeed, it would be the reversal of a conviction such as this which would have that effect." (*Ibid.*)

I write to emphasize a narrow basis for finding the error harmless. In *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182], the high court, in an opinion by Justice Scalia, found error in defining reasonable doubt reversible per se because the error infected the entire verdict. There was "no jury verdict of guilty-beyond-a-reasonable-doubt" as to *any* fact. (*Id.* at p. 280 [113 S.Ct. at p. 2082].) Accordingly, there was "no *object*, so to speak, upon which harmless-error scrutiny can operate." (*Ibid.*, original italics.) Here, by contrast, the error affected only a tiny part of the verdict. The jury made most of the factual findings its guilty verdict implies beyond a reasonable doubt. There *is* an "object" upon which harmless error scrutiny can operate: the actual verdict.

Justice Scalia recently summarized his position: "The error in the present case can be harmless only [1] if the jury verdict on other points effectively embraces this one or [2] if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well." (*California* v. *Roy* (1996) 519 U.S. 2, 7 [117 S.Ct. 337, 339-340, 136 L.Ed.2d 266] (conc. opn. of Scalia, J.), original italics.) This formulation suggests two separate tests. In this case, it appears that the jury verdict on other points does not "effectively embrace[]" the one removed from the jury. But, applying the second test, it is impossible, "upon the evidence," for the jury to find what it did find beyond a reasonable doubt without also finding the removed fact as well. The verdict shows the jury rejected the defense position on every contested point beyond a reasonable doubt. This jury believed the critical witnesses' testimony, even those portions the defense challenged. This jury could not possibly find what it *actually did find* without also finding the unchallenged missing element.

*Sullivan* is consistent with this view. The question, it says, "is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." (*Sullivan* v. *Louisiana, supra*, 508 U.S. at p. 279 [113 S.Ct. at p. 2081].) "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely

unattributable to the error." (*Ibid.*, original italics.) Here, we can examine what this actual jury actually did to assure ourselves the error did not contribute to its verdict. "[T]he jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error." (*Id.* at p. 280 [113 S.Ct. at p. 2082], original italics.)

Finding the error harmless on this basis is not "speculating" on what a "reasonable" or "hypothetical" jury might have done, but is instead analyzing what this *actual* jury *actually* did. (Cf. dis. opn. of Mosk, J., *post*, at p. 528; dis. opn., of Kennard, J., *post*, at pp. 556-557, fn. 3.)

**MOSK, J.**—I dissent.

In the superior court, defendant was charged with crimes including willful flight from a pursuing peace officer, specifically, City of Richmond Police Officers Rudy Bridgeman and Michael Gurney, resulting in death or serious bodily injury, which is a felony defined by Vehicle Code sections 2800.1 and 2800.3. One of the crime's elements is that the pursuer is, in fact, a peace officer—which means, for present purposes, a "police officer . . . of a city" who is *both* "employed in that capacity" *and* "appointed by the chief of police or the chief executive of the agency" (Pen. Code, § 830.1, subd. (a)). Defendant pleaded not guilty. Trial was by jury. Evidence was introduced that Bridgeman and Gurney were "employed in [the] capacity" of "police officer[s]" of the City of Richmond. (*Ibid.*) But none was introduced that they were "appointed by the chief of police or the chief executive of the agency." (*Ibid.*) In accordance with a pattern instruction, the superior court instructed the jury on the crime of willful flight from a peace officer. In doing so, however, it omitted the peace officer element. More precisely, it failed to submit the issue whether Bridgeman and Gurney were peace officers. Instead, and apparently sua sponte, it simply directed that "Officer Bridgeman and Officer Gurney *are* peace officers." (Italics added.)[1] The jury returned a verdict of guilty. The superior court rendered judgment accordingly. The Court of Appeal affirmed.

---

[1] In pertinent part, the superior court's instruction on the crime of willful flight from a peace officer was as follows:

"[E]very person who flees or attempts to elude a pursuing peace officer in violation of Vehicle Code Section 2800.1, and the flight or attempt to elude causes death or serious bodily injury to any person is guilty of a violation of Vehicle Code Section 2800.3, a felony.

"*Officer Bridgeman and Officer Gurney are peace officers.*

" . . . . . . . . . . . . . . . . . . . . . .

"In order to prove a violation of Vehicle Code section 2800.3, each of the following elements must be proved:

"1. A person, while operating a motor vehicle, willfully fled or otherwise attempted to elude a pursuing peace officer;

"2. Such person did so with the specific intent to evade the pursuing peace officer;

Unlike the majority, I would reverse. As I shall explain, by omitting from its instructions the peace officer element of the crime of willful flight from a peace officer, the superior court committed reversible error under the United States Constitution.

I

The first question that we must address is whether the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer is erroneous under the United States Constitution.

The answer that we must give is affirmative.[2]

Under decisions of the United States Supreme Court including *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182] (hereafter sometimes *Sullivan*), the due process clause of the Fourteenth Amendment to the United States Constitution, which incorporates the Fifth and Sixth Amendments thereto, including the Fifth Amendment's due process clause and the Sixth Amendment's jury trial clause, requires that, before it may obtain a valid conviction from a jury, a state must prove every element of a crime, and must do so beyond a reasonable doubt. (*Sullivan* v. *Louisiana, supra*, 508 U.S. at pp. 277-278 [113 S.Ct. at pp. 2080-2081.)

It follows that instructions to the jury in a state criminal trial that omit the requirement of proof of every element of a crime *beyond a reasonable doubt* are erroneous under the Fourteenth Amendment's due process clause incorporating the Fifth and Sixth Amendments. (See *Jackson* v. *Virginia* (1979) 443 U.S. 307, 320, fn. 14 [99 S.Ct. 2781, 2790, 61 L.Ed.2d 560].)

Furthermore, instructions to the jury in a state criminal trial that merely omit *a proper description* of the requirement of proof of every element of a crime beyond a reasonable doubt are themselves erroneous under the Fourteenth Amendment's due process clause incorporating the Fifth and Sixth

---

"3. The peace officer's vehicle exhibited at least one lighted red lamp visible from the front;

"4. The person saw or reasonably should have seen the red lamp;

"5. The peace officer's vehicle sounded a siren as reasonably necessary;

"6. The peace officer's motor vehicle was distinctively marked, as defined;

"7. The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and

"8. The flight from or the attempt to elude a pursuing police officer was the cause of serious bodily injury to another person." (Italics added.)

[2]For the analysis in this section, see *People* v. *Kobrin* (1995) 11 Cal.4th 416, 430 [45 Cal.Rptr.2d 895, 903 P.2d 1027] (conc. opn. of Mosk, J.); *People* v. *Hansen* (1994) 9 Cal.4th 300, 327, footnote 6 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (conc. & dis. opn. of Mosk, J.).

Amendments. (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at pp. 277-278 [113 S.Ct. at pp. 2080-2081].)

"The Sixth Amendment," *Sullivan* explains, "provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . .' . . . [W]e [have] found this right to trial by jury in serious criminal cases to be 'fundamental to the American scheme of justice,' and therefore applicable in state proceedings. The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' [Citation.] Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.]

"What the factfinder must determine to return a verdict of guilty is prescribed by the [Fifth Amendment's] Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, [citations], and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements, [citations]. This beyond-a-reasonable-doubt requirement, which was adhered to by virtually all common-law jurisdictions, applies in state as well as federal proceedings. [Citation.]

"It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine . . . whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at pp. 277-278 [113 S.Ct. at pp. 2080-2081], italics in original.)

Likewise—and of chief concern here—instructions to the jury in a state criminal trial that omit the requirement of proof *of every element of a crime* beyond a reasonable doubt are erroneous under the Fourteenth Amendment's due process clause incorporating the Fifth and Sixth Amendments. In *United States* v. *Gaudin* (1995) 515 U.S. 506 [115 S.Ct. 2310, 132 L.Ed.2d 444] (hereafter sometimes *Gaudin*), the United States Supreme Court held that instructions to the jury in a federal criminal trial that omit the requirement of proof of every element of a crime beyond a reasonable doubt are erroneous under the Fifth and Sixth Amendments. (*Id.* at pp. 509-511, 522-523 [115 S.Ct. at pp. 2313-2314, 2319].) A similar holding is compelled here. In *Sullivan*'s words, a "judge . . . may not direct a verdict for the State," as to a crime as a whole, "no matter how overwhelming the evidence." (*Sullivan*

v. *Louisiana*, *supra*, 508 U.S. at p. 277 [113 S.Ct. at p. 2080].) So too, as Justice Scalia stated in his concurring opinion in *Carella* v. *California* (1989) 491 U.S. 263 [109 S.Ct. 2419, 105 L.Ed.2d 218] (hereafter sometimes *Carella*), a judge may not direct such a verdict as to any of its elements. (*Id.* at pp. 268-269 [109 S.Ct. at pp. 2422-2423] (conc. opn. of Scalia, J.).) The instructional omission of an element is tantamount to a directed verdict thereon. (*Ibid.*)

## II

The second question that we must address is whether the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer is reversible under the United States Constitution.

For error under the United States Constitution, as made plain in decisions of the United States Supreme Court including *Sullivan* and *Yates* v. *Evatt* (1991) 500 U.S. 391 [111 S.Ct. 1884, 114 L.Ed.2d 432] (hereafter sometimes *Yates*),[3] the general rule on direct review of a state criminal judgment is harmless error analysis pursuant to *Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (hereafter sometimes *Chapman*), with its "harmless beyond a reasonable doubt" standard; the exception is automatic reversal. (E.g., *Sullivan* v. *Louisiana*, *supra*, 508 U.S. at pp. 278-279 [113 S.Ct. at pp. 2080-2082]; see, e.g., *Yates* v. *Evatt*, *supra*, 500 U.S. at p. 402 [111 S.Ct. at p. 1892].)

On the question of reversibility, as on the question of error, the answer that we must give is affirmative.

## A

The superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer is automatically reversible.[4]

Instructions to the jury in a state criminal trial that omit the requirement of proof of every element of a crime *beyond a reasonable doubt* are automatically reversible. (See *Jackson* v. *Virginia*, *supra*, 443 U.S. at p. 320, fn. 14 [99 S.Ct. at p. 2790].)

Furthermore, instructions to the jury in a state criminal trial that merely omit *a proper description* of the requirement of proof of every element of a crime beyond a reasonable doubt are themselves automatically reversible. (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at pp. 278-282 [113 S.Ct. at pp. 2080-2083].)

---

[3]*Yates* contains language, bearing on a point not pertinent here, that is disapproved in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 73, footnote 4 [112 S.Ct. 475, 482, 116 L.Ed.2d 385].

[4]For the analysis in this section, see *People* v. *Kobrin*, *supra*, 11 Cal.4th at page 430 (conc. opn. of Mosk, J.); *People* v. *Hansen*, *supra*, 9 Cal.4th at page 328, footnote 8 (conc. & dis. opn. of Mosk, J.).

*Sullivan* finds support for such conclusions in *Chapman* itself. "Consistent with the jury-trial guarantee," *Sullivan* teaches, "the question" *Chapman* "instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. [Citation.] Harmless-error review looks . . . to the basis on which 'the jury *actually rested* its verdict.' [Citation.] The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee. [Citations.]

"Once the proper role of an appellate court engaged in the *Chapman* inquiry is understood, the illogic of harmless-error review" in the face of an instructional omission bearing on the standard of proof beyond a reasonable doubt "becomes evident. [When] . . . there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found*" the defendant "guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. [Citation.] The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty." (*Sullivan* v. *Louisiana, supra*, 508 U.S. at pp. 279-280 [113 S.Ct. at pp. 2081-2082], italics in original.)

Likewise—and of chief concern here—instructions to the jury in a state criminal trial that omit the requirement of proof *of every element of a crime* beyond a reasonable doubt are automatically reversible. Under the holding of *Sullivan*, there is no jury verdict within the meaning of the Sixth Amendment that can support harmless error analysis when there is an instructional omission bearing on the standard of proof beyond a reasonable doubt; for there is then no jury verdict that the defendant is guilty of the crime *beyond a reasonable doubt*. Under the reasoning of *Sullivan*, there is similarly no jury verdict within the meaning of the Sixth Amendment that can support harmless error analysis when there is an instructional omission of an element of the crime; for there is then no jury verdict that the defendant is guilty *of the crime* beyond a reasonable doubt.

Assume that a crime with which Defendant A and Defendant B are separately charged has three elements.

At Defendant A's trial, there is an instructional omission bearing on the standard of proof beyond a reasonable doubt; the jury purportedly finds him guilty ·of the crime by finding all three of its elements, albeit not beyond a reasonable doubt; its verdict may be graphically depicted thus:

Proof Beyond a Reasonable Doubt

Element 1 Element 2 Element 3

At Defendant B's trial there is an instructional omission of one of the elements of the crime; the jury purportedly finds him guilty of the crime by finding two of its elements beyond a reasonable doubt, without finding the third element at all; its verdict may be graphically depicted thus:

Proof Beyond a Reasonable Doubt

Element 1 . Element 2 Element 3

Defendant A's trial is covered by *Sullivan*'s holding. The instructional omission bearing on the standard of proof beyond a reasonable doubt is automatically reversible because a reviewing court cannot supply its own findings of the three elements *beyond a reasonable doubt* in place of the jury's findings *not beyond a reasonable doubt* (*Sullivan* v. *Louisiana, supra,*

508 U.S. at pp. 280-281 [113 S.Ct. at pp. 2082-2083])—graphically, it cannot make up for what is partially lacking in each of the three bars representing the elements. In *Sullivan*'s words: "A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.' " (*Id.* at p. 281 [113 S.Ct. at p. 2082].)

Defendant B's trial is covered by *Sullivan*'s reasoning. The instructional omission of the third element is automatically reversible because a reviewing court cannot supply its own *finding* of the element in place of the jury's *nonfinding* (see *Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 280-281 [113 S.Ct. at pp. 2082-2083])—graphically, it cannot make up for what is totally lacking in the third bar representing that element. *Sullivan*'s words, quoted above, bear requotation: "A reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done. And when it does that, 'the wrong entity judge[s] the defendant guilty.' " (*Id.* at p. 281 [113 S.Ct. at p. 2082].)

At this point, we should note *Sullivan*'s final sentences prior to disposition, with their reference to *Arizona* v. *Fulminante* (1991) 499 U.S. 279 [111 S.Ct. 1246, 113 L.Ed.2d 302] (hereafter *Fulminante*), and to the distinction between "structural" and "trial" defects or errors that Chief Justice Rehnquist·fabricated in his opinion therein. "In *Fulminante*, we distinguished between, on the one hand, 'structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards,' [citation], and, on the other hand, trial errors which occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented,' [citation]. Denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly an error of the former sort, the jury guarantee being a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function, [citation]. The right to trial by jury reflects . . . 'a profound judgment about the way in which law should be enforced and justice administered.' [Citation.] The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.' " (*Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 281-282 [113 S.Ct. at pp. 2082-2083].)

To conclude.

As in *Sullivan* itself, a defendant's "right to a jury verdict of guilt beyond a reasonable doubt" (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at p. 2083]) as to a crime is denied when there is an instructional omission bearing on the standard of proof beyond a reasonable doubt: there

is then no jury verdict that the defendant is guilty of the crime *beyond a reasonable doubt.*

So too, as in this cause, a defendant's "right to a jury verdict of guilt beyond a reasonable doubt" (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at p. 2083]) as to a crime is denied when there is an instructional omission of an element of the crime: there is then no jury verdict that the defendant is guilty *of the crime* beyond a reasonable doubt.

B

Even if it were not automatically reversible, the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer could not be held harmless beyond a reasonable doubt under *Chapman.*[5]

"The *Chapman* test," as explained in *Yates,* "is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Yates* v. *Evatt, supra,* 500 U.S. at pp. 402-403 [111 S.Ct. at p. 1892], quoting *Chapman* v. *California, supra,* 386 U.S. at p. 24 [87 S.Ct. at p. 828]; accord, *Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 278-279 [113 S.Ct. at pp. 2080-2082].) "To say that an error did not 'contribute' to the ensuing verdict" is "to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates* v. *Evatt, supra,* 500 U.S. at p. 403 [111 S.Ct. at pp. 1893]; accord, *Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 278-280 [113 S.Ct. at p. 2080-2082].)

Thus, the focus under *Chapman* is what the jury actually decided and whether the error may have tainted its decision. "[T]he issue . . . is whether the jury actually rested its verdict on" an adequate basis, "independently of the" error. (*Yates* v. *Evatt, supra,* 500 U.S. at p. 404 [111 S.Ct. at p. 1893].) Stated differently, whether the error had any "effect" "upon the . . . verdict in the case at hand." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at p. 2081].) Or in still other words, "whether the . . . verdict actually rendered in *this* trial was surely unattributable to the error." (*Ibid.,* italics in original.)

As a consequence, the focus under *Chapman* is *not* what a reviewing court might itself decide if it looked to the entire record.

---

[5]For the analysis in this section, see *People* v. *Harris* (1994) 9 Cal.4th 407, 440-444 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. & dis. opn. of Mosk, J.); cf. *People* v. *Johnson* (1993) 6 Cal.4th 1, 55-59 [23 Cal.Rptr.2d 593, 859 P.2d 673] (conc. & dis. opn. of Mosk, J.) (dealing with an instructional omission of an element of a death-qualifying special circumstance).

First, a reviewing court is not the proper decision maker. (*Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 278-281 [113 S.Ct. at pp. 2080-2082].) To be sure, *Rose* v. *Clark* (1986) 478 U.S. 570, 579 [106 S.Ct. 3101, 3106, 92 L.Ed.2d 460] (hereafter *Clark*)—on which the majority rely—states that an error is harmless "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt . . . ." Moreover, *Pope* v. *Illinois* (1987) 481 U.S. 497, 502-503 [107 S.Ct. 1918, 1921-1922, 95 L.Ed.2d 439] (hereafter sometimes *Pope*)—on which the majority also rely—quotes that language (albeit inaccurately) with approval. Questions about the soundness of *Clark* and *Pope* in this regard were raised by the analysis in Justice Scalia's concurring opinion in *Carella*. They were soon resolved. *Yates* expressly declares that the *Clark* statement is simply "not . . . correct." (*Yates* v. *Evatt, supra,* 500 U.S. at p. 403, fn. 8 [111 S.Ct. at p. 1892].) And *Sullivan* impliedly disapproves *Pope*'s approval of that language, relying as it does on Justice Stevens's dissenting opinion in *Pope*: "The harmless-error doctrine may enable a court to remove a taint from proceedings in order to *preserve* a jury's findings, but it cannot constitutionally *supplement* those findings." (*Pope* v. *Illinois, supra,* 481 U.S. at p. 509 [107 S.Ct. at pp. 1925-1926] (dis. opn. of Stevens, J.), italics in original, cited in *Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 280 [113 S.Ct. at p. 2082].) By its very terms, of course, *Chapman* precludes a reviewing court from finding harmlessness based simply "upon" its own "view of 'overwhelming evidence.' " (*Chapman* v. *California, supra,* 386 U.S. at p. 23 [87 S.Ct. at p. 827].)

Second, a reviewing court is not automatically entitled to consider the entire record. The broad "assumption" in decisions like *Clark* that the "harmlessness of an error is to be judged after a review of the entire record" is unsound—unless, that is, "the jurors, as reasonable persons, would have considered the entire . . . record" in spite of the error. (*Yates* v. *Evatt, supra,* 500 U.S. at pp. 405-406 [111 S.Ct. at p. 1894].)

Neither is the focus under *Chapman* what a reviewing court might conjecture the jury would have decided in the absence of the error. The "hypothetical inquiry" whether, if the jury had not been exposed to the error, it would have made the decision that it did, "is inconsistent with the harmless-error standard announced in *Chapman* . . . . While such a hypothetical inquiry ensures that the State has, in fact, proved" what it had to prove "beyond a reasonable doubt, it does not ensure that it has" done so "*to the satisfaction of a jury.*" (*Yates* v. *Evatt, supra,* 500 U.S. at p. 414 [111 S.Ct. at p. 1898] (conc. opn. of Scalia, J.), italics in original; accord, *Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 278-281 [113 S.Ct. at pp. 2080-2083].) "The inquiry, in other words, is not whether, in a trial that occurred without

the error, a guilty verdict would surely have been rendered . . . ." (*Sullivan v. Louisiana, supra,* 508 U.S. at p. 279.) Here, *Sullivan* relies on Justice Stevens's dissenting opinion in *Pope*: "It is fundamental that an appellate court . . . is not free to decide in a criminal case that, if asked, a jury *would* have found something that it did not find." (*Pope v. Illinois, supra,* 481 U.S. at pp. 509-510 [107 S.Ct. at p. 1926] (dis. opn. of Stevens, J.), italics in original, cited in *Sullivan v. Louisiana, supra,* 508 U.S. at p. 280 [113 S.Ct at p. 2082].)

Lastly, the focus under *Chapman* is not what a reviewing court might speculate concerning "what effect the . . . error might generally be expected to have upon a reasonable jury . . . ." (*Sullivan v. Louisiana, supra,* 508 U.S. at p. 279 [113 S.Ct. at p. 2081].) Thus, *Pope*'s concern with what a "rational jury" might or might not find is beside the point. (*Pope v. Illinois, supra,* 481 U.S. at p. 503 [107 S.Ct. at p. 1922].) "[M]ore than appellate speculation about a hypothetical jury's action" is required. (*Sullivan v. Louisiana, supra,* 508 U.S. at p. 280 [113 S.Ct. at p. 2082.)

In determining whether the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer could be held harmless beyond a reasonable doubt under *Chapman,* we must commence our analysis with the declaration of *Yates* in mind: "To say that an error did not contribute to the verdict is . . . to find that error *unimportant* in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates v. Evatt, supra,* 500 U.S. at p. 403 [111 S.Ct. at p. 1893], italics added; accord, *Sullivan v. Louisiana, supra,* 508 U.S. at pp. 278-281 [113 S.Ct. at pp. 2080-2083].)

But how are we to go about assessing the "importance" or "unimportance" of the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer?

*Yates* proceeds thus with regard to an instruction incorporating a mandatory rebuttable presumption of an element of a crime.

"[T]o say that an instruction to apply [such a] presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence considered by those jurors independently of the presumption.

"Before reaching such a judgment, a court must take two quite distinct steps. First, it must ask what evidence the jury actually considered in reaching its verdict. . . . In answering this question, a court does not

conduct a subjective enquiry into the jurors' minds. The answer must come, instead, from analysis of the instructions given to the jurors and from application of that customary presumption that jurors follow instructions and, specifically, that they consider relevant evidence on a point in issue when they are told that they may do so.

"Once a court has made the first enquiry into the evidence considered by the jury, it must then weigh the probative force of that evidence as against the probative force of the presumption standing alone. To satisfy *Chapman*'s reasonable doubt standard, it will not be enough that the jury considered evidence from which it could have come to the verdict without reliance on the presumption. Rather, the issue under *Chapman* is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption." (*Yates* v. *Evatt*, *supra*, 500 U.S. at pp. 403-405 [111 S.Ct. at p. 1893].)

Put differently, the first question is "whether the jury's verdict . . . rest[ed] on that evidence as well as on the presumption[] . . . ." (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 407 [111 S.Ct. at p. 1895].)

The second question is "whether that evidence was of such compelling force as to show beyond a reasonable doubt that the presumption[] must have made no difference in reaching the verdict obtained"—in other words, whether the evidence of the presumed fact made the presumption superfluous. (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 407 [111 S.Ct. at p. 1895].)

"It is only when the effect of the presumption is comparatively minimal to this degree that it can be said, in *Chapman*'s words, that the presumption did not contribute to the verdict rendered." (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 405 [111 S.Ct. at pp. 1893-1894].)

*Yates* goes on to suggest an even more "restrictive" analysis for an instruction incorporating a mandatory irrebuttable or "conclusive" presumption of an element of a crime. (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 406, fn. 10 [111 S.Ct. at p. 1894].) Review of this sort, which is expressly derived from Justice Scalia's concurring opinion in *Carella*, "would focus only on the predicate facts to be relied on under the presumption and would require a court to determine whether they 'are so closely related to the ultimate fact

to be presumed that no rational jury could find those facts without also finding that ultimate fact.' " (*Ibid.*, quoting *Carella* v. *California*, *supra*, 491 U.S. at p. 271 [109 S.Ct. at pp. 2423-2424] (conc. opn. of Scalia, J.).) This "narrow focus" is appropriate "because the terms of a conclusive presumption tend to deter a jury from considering any evidence for the presumed fact beyond the predicate evidence; indeed, to do so would be a waste of the jury's time and contrary to its instructions." (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 406, fn. 10 [111 S.Ct. at p. 1894].)

It follows that an analysis more restrictive still would be required for an instruction omitting an element of a crime altogether. Such an instruction removes any "ultimate fact" from the jury's consideration without leaving behind any "predicate facts" to be found. If a mandatory irrebuttable or conclusive presumption "tend[s] to deter a jury from considering any evidence for the presumed fact beyond the predicate evidence" (*Yates* v. *Evatt*, *supra*, 500 U.S. at p. 406, fn. 10 [111 S.Ct. at p. 1894]), an omission, by definition, withdraws the omitted fact entirely. "[S]uch an error cannot be harmless. See *Sullivan* [v. *Louisiana*, 508 U.S. 275, 278-281 (1993)] . . . ; see also *Yates* v. *Evatt*, 500 U.S. 391, 406 . . . (1991) . . . . Harmless error analysis focuses on 'the basis on which "the jury actually rested its verdict." ' *Sullivan*, [508 U.S. at 279] . . . ; *Yates*, 500 U.S. at 403-05 . . . . Under the guidance of *Yates*, we may no longer consider the strength of evidence and determine whether it was so clear that the jury *would have* found the element of a crime to exist, had it been properly instructed, but, instead, we must determine whether the jury was actually able to consider that evidence under the instructions given by the court. When proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all." (*U.S.* v. *Gaudin* (9th Cir. 1994) 28 F.3d 943, 951 (in bank), affd. (1995) 515 U.S. 506 [115 S.Ct. 2310, 132 L.Ed.2d 444], italics in original.)

Under an analysis of this sort, the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer could not be held harmless beyond a reasonable doubt under *Chapman*.

I accept that *Yates* permits "overwhelming" evidence to play a role with regard to an instruction incorporating a mandatory rebuttable presumption of an element of a crime: "[T]he issue under *Chapman* is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry

cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so *overwhelming* as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption." (*Yates* v. *Evatt, supra*, 500 U.S. at p. 405 [111 S.Ct. at 1893], italics added.) In this regard, however, *Yates* is without applicability here. In view of the absence of evidence that Officer Bridgeman and Officer Gurney were "appointed by the chief of police or the chief executive of the agency" (Pen. Code, § 830.1, subd. (a)), the evidence that they were peace officers was not "overwhelming." Even if it had been such, it was presumably *not* considered by the jury in accordance with the instructions, for the superior court simply directed that Bridgeman and Gurney were, in fact, peace officers.

## III

The majority do not, and cannot, disagree with the conclusion that the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer is erroneous under the United States Constitution. We may therefore pass on.

The majority, however, do indeed disagree with the conclusion that the superior court's instructional omission of the peace officer element is reversible under the United States Constitution.

Before proceeding further, we must address, and reject, the majority's attempt to cast doubt on the existence of the instructional omission of the peace officer element by casting doubt on the existence of the element itself—which, as noted, requires "appoint[ment]" as a "police officer . . . of a city" "by the chief of police or the chief executive of the agency" as well as "employ[ment] in that capacity" (Pen. Code, § 830.1, subd. (a)). Such an effort may be discerned in their repeated reference to this element as merely a "component" of what they say is merely a single element of the crime of willful flight from a peace officer. As I read Vehicle Code sections 2800.1 and 2800.3, peace officer status may be deemed a "component" of *every* element. Or at least of *virtually every* element. The drafters of the pattern instruction followed by the superior court broke the crime down into eight elements—and peace officer status was a "component" of *seven.* (See pp. 522-523, fn. 1, *ante.*) We need not detain ourselves on this point. The majority fail to follow through. In the end, they admit what they must, owning that the "peace officer requirement is an expressly enumerated element of the crime . . . ." (Maj. opn., *ante,* at p. 505.)

We must similarly address, and reject, the majority's attempt to minimize the significance of the instructional omission of the peace officer element by

minimizing the significance of the element itself. By definition, each and every element of a crime is necessary. Only in an Orwellian world would all elements be necessary, but some less necessary than others. In their effort to trivialize this element by labeling it "peripheral" (e.g., maj. opn., *ante*, at p. 505), they succeed only in marginalizing their own analysis.

We must next address, and reject, the majority's attempt to deny the absence of evidence that Officer Bridgeman and Officer Gurney were peace officers, that is, that they were *both* "employed in [the] capacity" of "police officer[s]" of the City of Richmond *and* "appointed by the chief of police or the chief executive of the agency" (Pen. Code, § 830.1, subd. (a)). As to "employment," the evidence may have been "uncontradicted." (E.g., maj. opn., *ante*, at p. 475.) But, as to "appointment," it was nonexistent. Relying on *People* v. *Lara* (1994) 30 Cal.App.4th 658 [35 Cal.Rptr.2d 886], the majority seek to avoid this inconvenience. They assert that it would be " 'unreasonable' " to require evidence of "appointment" "in light of the purpose of the statute and the presumption that official duty regularly has been performed . . . ." (Maj. opn., *ante*, at p. 491, fn. 13, quoting *People* v. *Lara, supra,* 30 Cal.App.4th at p. 666, fn. 2.) It would not. The "purpose of the statute" (maj. opn., *ante*, at p. 491, fn. 13) is to define "peace officer" (see Pen. Code, § 830): Its definition expressly demands "appointment" (*id.,* § 830.1, subd. (a)). Any "presumption that official duty regularly has been performed" (maj. opn., *ante*, p. 491, fn. 13) is without effect: There is no evidence whatsoever of the predicate fact underlying the presumption— namely, that the "chief of police or the chief executive of the agency" (Pen. Code, § 830.1, subd. (a)) was subject to any "official duty" (maj. opn., *ante*, p. 491, fn. 13) to make the "appointment" in question.[6]

We must then address, and reject, the majority's attempt to examine the instructional omission of the peace officer element, practically exclusively, in light of the distinction between "structural" and "trial" defects or errors, rather than under the Sixth Amendment jury-verdict preclusion analysis. We must do the opposite. *Sullivan* itself so implies. Other considerations are in support. When it was fabricated by Chief Justice Rehnquist in his opinion in *Fulminante*, the distinction between "structural" and "trial" defects or errors did not carry logical force.[7] In the years that have followed, it has not gained any. Hence, it should be allowed to operate only where it must, when it must.

---

[6]The majority also assert that "defendant does not contend that the prosecution was required to present evidence of" "appointment." (Maj. opn., *ante*, at p. 490, fn. 13.) Not expressly perhaps. But certainly by implication.

[7]As I explained in my dissenting opinion in *People* v. *Cahill* (1993) 5 Cal.4th 478 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (hereafter sometimes *Cahill*):

In concluding that the superior court's instructional omission of the peace officer element is not automatically reversible, the majority rely largely on *California* v. *Roy* (1997) 519 U.S. 2 [117 S.Ct. 337, 136 L.Ed.2d 266] (hereafter sometimes *Roy*), and *Johnson* v. *United States* (1997) 520 U.S. 461 [117 S.Ct. 1544, 137 L.Ed.2d 718]] (hereafter sometimes *Johnson*). In vain.

The short answer is this. *Roy* and *Johnson* do nothing more than indicate, in contexts substantially different from the present one of direct review of a state criminal judgment, what is already apparent from the analysis set out above—namely, that the United States Supreme Court has not squarely held whether, on such review, an instructional omission of an element of a crime

"[In *Fulminante*,] Chief Justice Rehnquist . . . declare[s] that the question whether a federal constitutional error is automatically reversible or, instead, is subject to harmless-error analysis under *Chapman* depends on the following crucial distinction.

"On one side, there is what he labels ' "trial error," ' which 'occur[s] during the presentation of the case to the jury, and which may therefore be quantitatively assessed . . . in order to determine whether [it] was harmless beyond a reasonable doubt.' [Citation.] . . .

"On the other, there are what he calls 'structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards.' [Citation.] Here, assertedly, belong, inter alia, the 'total deprivation of the right to counsel at trial,' the participation of a 'judge who was not impartial,' the 'unlawful exclusion of members of the defendant's race from a grand jury,' the denial of the 'right to self-representation at trial,' and the deprivation of the 'right to public trial.' [Citation.] Each of these flaws 'affect[s]' the 'entire conduct of the trial from beginning to end' or the 'framework within which the trial proceeds.' [Citation.] ' "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." ' [Citation.]

"Chief Justice Rehnquist's crucial distinction 'fails.' [Citation.] His dichotomy, it may be noted, 'has no support in precedent.' [Citation.] And that is the least of its weaknesses.

"To begin with, the distinction simply does not work. The omission of an instruction on the prosecution's burden of proof beyond a reasonable doubt is, in Chief Justice Rehnquist's words, a 'classic "trial error[.]" ' [Citation.] Nevertheless, it requires automatic reversal. [Citation.]⁹ By contrast, the denial of a criminal defendant's right to be personally present at his own trial is surely as much a 'structural defect' as the denial of his right to represent himself. Indeed, it would 'strain[] credulity' to assert otherwise. [Citation.] All the same, denial of the right of personal presence is deemed subject to harmless-error analysis. [Citation.]

"Perhaps more important, the distinction is 'meaningless.' [Citation.] Chief Justice Rehnquist 'never clearly articulates the structure that the structural errors undermine.' [Citation.] In fact, he never articulates that 'structure' at all." (*People* v. *Cahill, supra,* 5 Cal.4th at pp. 547-548 (dis. opn. of Mosk, J.).)

Footnote 9 states: "The giving of a reasonable-doubt instruction that is merely 'deficient' under the United States Constitution is arguably an even more 'classic "trial error." ' Yet in *Sullivan* v. *Louisiana* (1993) [508] U.S. [275, 278-282 [124 L.Ed.2d 182, 188-191, 113 S.Ct. 2078]], the United States Supreme Court unanimously held that it requires automatic reversal. Chief Justice Rehnquist concurred in the opinion of the court. Writing separately, he made a transparently unsuccessful attempt to square his vote with the 'trial error/structural defect' distinction he had earlier created in *Fulminante*. [Citation.] His failure demonstrates that the distinction is specious." (*People* v. *Cahill, supra,* 5 Cal.4th at p. 548, fn. 9 (dis. opn. of Mosk, J.).)

is automatically reversible. In the absence of such a holding, all that we can do is to apply the court's reasoning, which in the preceding pages has yielded a conclusion in the affirmative. And, of course, we have no choice but to apply the court's reasoning. The question has been presented in this cause. We cannot wait for the court to give an answer sometime in the future. Neither ought we simply to attempt to guess what the court's answer might be. "We are under a solemn obligation to interpret and implement the United States Constitution. We are no less capable of discharging that duty than any other court." (*People* v. *Harris*, *supra*, 9 Cal.4th at p. 449, fn. 1 (conc. & dis. opn. of Mosk, J.).)

The long answer is as follows.

*Roy* did not arise in a context like the present, that is, direct review of a state criminal judgment, but rather in a context substantially different, that is, a federal habeas corpus proceeding by a state prisoner collaterally challenging such a judgment.

In *Brecht* v. *Abrahamson* (1993) 507 U.S. 619, 627-638 [113 S.Ct. 1710, 1716-1722, 123 L.Ed.2d 353] (hereafter *Brecht*), the United States Supreme Court had held that, in a state-prisoner federal habeas corpus proceeding, the harmless error standard for a "trial" error violative of the United States Constitution was not whether the error was "harmless beyond a reasonable doubt" under *Chapman*, but whether it "had substantial and injurious effect or influence in determining the jury's verdict" within the meaning of *Kotteakos* v. *United States* (1946) 328 U.S. 750, 776 [66 S.Ct. 1239, 1253, 90 L.Ed. 1557] (hereafter *Kotteakos*), which applies to nonconstitutional error in federal criminal trials. It adopted the more tolerant test of *Kotteakos* instead of the less forgiving one of *Chapman* in recognition of such factors as the following: the historical distinction between direct review as the ordinary way to challenge a conviction, and state-prisoner federal habeas corpus as an extraordinary one, reserved for persons who have suffered grievous wrong; the state's interest in finality; concerns of comity and federalism; and the avoidance of undue social costs. It implied that automatic reversal was required, even in a state-prisoner habeas corpus proceeding, for a "structural" error.

After trial in the Superior Court of the State of California for the County of Butte, Kenneth Duane Roy was convicted on a jury's verdict of first degree murder and robbery. On appeal, he contended that the superior court had committed error under *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318] (hereafter *Beeman*), by inadequately defining the theory of vicarious liability based on aiding and abetting. In *Beeman*, we

had held that an aider and abettor must act both with "knowledge" of the perpetrator's criminal purpose and with "intent" to attain its object. (*Id.* at p. 560.) The superior court, however, instructed only on knowledge and not also on intent. The Court of Appeal of the State of California for the Third Appellate District affirmed. It apparently deemed the error violative of the United States Constitution. But it held it harmless beyond a reasonable doubt under *Chapman*.

Filing a petition for writ of habeas corpus in the United States District Court for the Eastern District of California as a state prisoner, Roy raised the same contention of *Beeman* error. Finding the error harmless, the federal district court denied relief. A divided panel of the United States Court of Appeals for the Ninth Circuit affirmed. Later hearing the case in bank, the Ninth Circuit reversed. It stated that the "instructional error in this case may be described either as the omission . . . or as the misdescription of an element" of a crime. (*Roy* v. *Gomez* (9th Cir. 1996) 81 F.3d 863, 867, fn. 4 (in bank).) It then applied a special kind of harmless error analysis: It based its standard on Justice Scalia's concurring opinion in *Carella*, and looked to whether the jury necessarily found that Roy possessed the intent required for the theory of vicarious liability based on aiding and abetting; it qualified its test with the "tie-breaking" rule of *O'Neal* v. *McAninch* (1995) 513 U.S. 432, 436-437 [115 S.Ct. 992, 994-995, 130 L.Ed.2d 947] (hereafter *O'Neal*), which states that, when, in a state-prisoner federal habeas corpus proceeding, the federal district court is "in grave doubt as to the harmlessness of an error," the "petitioner must win."

On certiorari, the United States Supreme Court vacated the judgment of the Ninth Circuit Court of Appeals and remanded the cause for further proceedings. In a *per curiam* opinion, it concluded as follows. In a state-prisoner federal habeas corpus proceeding, the federal district court, in accordance with *Brecht*, "ordinarily should apply the 'harmless error' standard . . . previously enunciated in *Kotteakos* . . . , namely 'whether the error "had substantial and injurious effect or influence in determining the jury's verdict." ' " (*California* v. *Roy*, *supra*, 519 U.S. at pp. 4, 5 [117 S.Ct. at p. 338].) Furthermore, the federal district court, in accordance with *O'Neal*, must decide in the petitioner's favor when it " 'is in grave doubt as to the harmlessness of an error . . . [.]' " (*Id.* at p. 5 [117 S.Ct. at p. 338].) "The state court[] in this case applied harmless-error analysis of the strict variety, and . . . found the error 'harmless beyond a reasonable doubt.' [Citation.] The specific error at issue here—an error in the instruction that defined the crime—is, as the Ninth Circuit itself recognized, as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission.' [Citation.] No one claims that the

error at issue here is of the 'structural' sort that "'def[ies] analysis by 'harmless error' standards." ' [Citation.] The analysis advanced by the Ninth Circuit, while certainly consistent with [Justice Scalia's] concurring opinion in *Carella*, does not, in our view, overcome the holding of *Brecht*, followed in *O'Neal*, that for reasons related to the special function of habeas courts, those courts must review such error (error that may require strict review of the *Chapman*-type on direct appeal) under the *Kotteakos* standard." (*California* v. *Roy, supra*, 519 U.S. at p. 5 [117 S.Ct. at p. 339].)

In a concurring opinion, Justice Scalia, who was joined by Justice Ginsburg on this point, stated that he "agree[d] with [the] . . . *per curiam* opinion . . . that the *Brecht-O'Neal* standard for reversal of the conviction ('grave doubt as to the harmlessness of the error') rather than the more stringent *Chapman* standard (inability to find the error 'harmless beyond a reasonable doubt') applies to the error in this case when it is presented, not on direct appeal, but as grounds for habeas corpus relief. . . . [¶] I do not understand the opinion, however, to address the question of what *constitutes* the harmlessness to which [*Kotteakos*'s] more deferential standard is applied . . . . As we held in *Sullivan* v. *Louisiana*, 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182] (1993), a criminal defendant is constitutionally entitled to a *jury verdict* that he is guilty of the crime, and absent such a verdict the conviction must be reversed, 'no matter how inescapable the findings to support that verdict might be.' [Citation.] A jury verdict that he is guilty of the crime means, of course, a verdict that he is guilty of *each necessary element* of the crime. *United States* v. *Gaudin*, 515 U.S. [506, 522-523 [115 S.Ct. 2310, 2319-2320, 132 L.Ed.2d 444]] (1995). Formally, at least, such a verdict did not exist here: the jury was never asked to determine that Roy had the [intent required for the theory of vicarious liability based on aiding and abetting]. *People* v. *Beeman*, 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318] (1984). [¶] The absence of a formal verdict on this point can not be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise. To allow the error to be cured in that fashion would be to dispense with trial by jury. 'The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.' *Sullivan, supra*, at 280 [113 S.Ct. at p. 2082]. The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well. *See Carella* v. *California*, 491 U.S. 263, 271 [109 S.Ct. 2419, 2423-2424, 105 L.Ed.2d 218] (1989) (SCALIA, J., concurring). I concur in the remand so that the Ninth Circuit may determine whether there is 'grave doubt' that this is so . . . ." (*California* v. *Roy, supra*, 519 U.S. at pp. 6-7 [117 S.Ct. at pp. 339-340] (conc. opn. of Scalia, J.), italics in original.)

What does *Roy* amount to?

At the outset, let us agree to overlook the United States Supreme Court's error under California law, which followed that of the Ninth Circuit. The superior court committed *Beeman* error. That means that what it omitted in its instructions was not an element of a crime: From all that appears, it properly defined first degree murder and robbery, the offenses of which Roy was convicted. What it omitted was rather the intent required for the theory of vicarious liability based on aiding and abetting.

With that said, *Roy* indicates, in the context of a federal habeas corpus proceeding by a state prisoner collaterally challenging a state criminal judgment, that the United States Supreme Court has not squarely held whether, on direct review of such a judgment, an instructional omission of an element of a crime is automatically reversible.[8] For himself and Justice Ginsburg, Justice Scalia implied an affirmative answer to the underlying question. He allowed an exception only when the "jury verdict on other points effectively embraces" the omitted element (*California* v. *Roy, supra,* 519 U.S. at p. 7 [117 S.Ct. at p. 339] (conc. opn. of Scalia, J.))—that is, when the jury necessarily found the omitted element under other, proper instructions—or when "it is impossible, upon the evidence, to have found what the verdict *did* find without finding" the omitted element "as well" (*id.* at p. 7 [117 S.Ct. at p. 340] (conc. opn. of Scalia, J.), italics in original)— that is, when the jury found "predicate facts" that might be said to underlie the "ultimate fact" of the omitted element. The signatories of the *per curiam* opinion, by contrast, avoided the question altogether: they stated, erroneously, that *Beeman* error is an "error in the instruction that define[s] the crime," and that it is "as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission . . . .' "; they immediately added that "[n]o one" there "claims that the error at issue here is of the 'structural' sort that ' "def[ies] analysis by 'harmless error' standards . . ." ' " (*California* v. *Roy, supra,* 519 U.S. at p. 5 [117 S.Ct. at p. 339]).[9]

*Johnson,* which we take up next, also did not arise in a context like the present, that is, direct review of a state criminal judgment, but rather in a

---

[8]Citing *U.S.* v. *North* (D.C. Cir. 1990) 910 F.2d 843, 893, opinion withdrawn and superseded in other part on rehearing, 920 F.2d 940, the majority assert that the United States Supreme Court "never has held that an erroneous instruction affecting a single element of a crime will amount to *structural error* . . . ." (Maj. opn., *ante,* at p. 503, italics added.) *North* is curious support, inasmuch as it predates Chief Justice Rehnquist's fabrication of the distinction between "structural" and "trial" defects or errors in his opinion in *Fulminante.*

[9]On remand, over a dissent, the Ninth Circuit affirmed: "We hold that the erroneous jury instruction in this case neither substantially nor injuriously influenced the jury's verdict, and was thus harmless under *Brecht* and *O'Neal.*" (*Roy* v. *Gomez* (9th Cir. 1997) 108 F.3d 242, 243 (in bank).)

context substantially different, that is, direct review of a federal criminal judgment subject to the Federal Rules of Criminal Procedure.

Joyce B. Johnson was subpoenaed before a United States grand jury that was investigating matters including alleged drug trafficking by Earl James Fields, who was her lover. She testified that she had obtained tens of thousands of dollars to improve her home from a box of cash given to her late mother in 1985 or 1986 by one Gerald Talcott.

On the basis of this testimony, Johnson was indicted for perjury. One of the elements of this crime is the materiality of the statement or statements in question. At trial before a jury in the United States District Court for the Middle District of Florida, she faced evidence that Fields had negotiated the purchase of her home, that she had paid for the property with eight different cashier's checks, including two from a corporation in which Fields had an interest, and that Talcott had died in 1982, long before he had assertedly given her late mother the mysterious "box of cash." Without any objection on her part, the federal district court omitted the element of materiality from its instructions to the jury: It stated that materiality was a question entrusted to its determination; it then directed that the statements at issue were, in fact, material. The jury returned a verdict of guilty. The federal district court rendered judgment accordingly.

Subsequently, in *Gaudin*, the United States Supreme Court held that an instructional omission of the element of materiality of the crime of making false statements, which is related to the crime of perjury, was erroneous under the Fifth and Sixth Amendments. (*United States* v. *Gaudin*, *supra*, 515 U.S. at pp. 509-511, 522-523 [115 S.Ct. at pp. 2313-2314, 2319-2320].)

On Johnson's appeal, the United States Court of Appeals for the Eleventh Circuit affirmed. Johnson apparently contended that, pursuant to *Gaudin*, the federal district court's instructional omission of the element of materiality of the crime of perjury was erroneous under the Fifth and Sixth Amendments and, as such, automatically reversible. Applying rule 30 of the Federal Rules of Criminal Procedure (18 U.S.C.) (hereafter rule 30), the Eleventh Circuit determined that, by failing to object to the instructional omission, she had failed to preserve her claim for review. Rule 30 states that "[n]o party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Looking to rule 52(b) of the same rules (hereafter rule 52(b)), the Eleventh Circuit proceeded to determine whether it could consider the claim nonetheless. Rule 52(b) states that "[p]lain errors . . . affecting

substantial rights may be noticed although they were not brought to the attention of the court." In this regard, the Eleventh Circuit followed *United States* v. *Olano* (1993) 507 U.S. 725, 731-737 [113 S.Ct. 1770, 1776-1780, 123 L.Ed.2d 508] (hereafter *Olano*), which holds to the following effect: Under rule 52(b), a federal appellate court has discretionary authority to reach an error that has not been preserved for review, and to reverse therefor, only if there was "error," the error was "plain," and the plain error "affect[ed] substantial rights," which normally means that it had a prejudicial effect on the outcome; it may not exercise such authority, however, unless the error in question "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." The Eleventh Circuit determined that it could not consider the claim. It apparently assumed that the instructional omission of the element of materiality was "error" and that such error was "plain," but concluded that any such plain error did not "affect[] substantial rights" because the evidence that the statements in question were material was "overwhelming," and no reasonable juror could find otherwise.

On certiorari, the United States Supreme Court affirmed.

The court held that, pursuant to *Gaudin*, an instructional omission of the element of materiality of the crime of making false statements was indeed erroneous under the Fifth and Sixth Amendments.

But the court also held that, under rule 30, Johnson had failed to preserve her claim for review by failing to object to the instructional omission below, and that, under rule 52(b), the Eleventh Circuit could not consider the point.

At the outset, the court rejected an argument made by Johnson that the Federal Rules of Criminal Procedure did not apply because an instructional omission of an element of a crime is a "structural" error: The "seriousness of the error claimed does not remove consideration of it from [their] ambit . . . ." (*Johnson* v. *United States, supra*, 520 U.S. at p. 466 [117 S.Ct. at p. 1548].)

The court then turned to apply rule 52(b) as construed in *Olano*. It concluded as follows. *First*, the instructional omission below was "error." (*Johnson* v. *United States, supra*, 520 U.S. at p. 467 [117 S.Ct. at p. 1549].) *Second*—in a part in which Justice Scalia did not join—it was "plain error." (*Id.* at p. 467 [117 S.Ct. at p. 1549].) *Third*—in another part in which Justice Scalia did not join—it may, or may not, have "affect[ed] substantial rights"—a question that was left undecided: "It is at this point that [Johnson's] argument that the failure to submit an element of the offense to the jury is 'structural error' becomes relevant. She contends in effect that if

an error is so serious as to defy harmless-error analysis, it must also 'affec[t] substantial rights.' . . . [¶] It is by no means clear that the error here fits within [the 'structural'] class . . . . *Sullivan* v. *Louisiana*, the case most closely on point, held that the erroneous definition of 'reasonable doubt' vitiated all of the jury's findings because one could only speculate what a properly charged jury might have done. [Citation.] The failure to submit materiality to the jury, as in this case, can just as easily be analogized to improperly instructing the jury on an element of the offense, [citations], an error which is subject to harmless-error analysis, as it can be to failing to give a proper reasonable-doubt instruction altogether." (*Johnson* v. *United States*, *supra*, 520 U.S. at pp. 468-469 [117 S.Ct. at pp. 1549-1550].) *Fourth*, even on the assumption that it did indeed " 'affect[] substantial rights,' " the instructional omission did not " 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings' " (*id.* at p. 469 [117 S.Ct. at p. 1550]: "[T]he evidence supporting materiality was 'overwhelming.' [Citation.] Materiality was essentially uncontroverted at trial and has remained so on appeal. . . . [Johnson] has presented no plausible argument [to the contrary]. [¶] On this record there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' Indeed, it would be the reversal of a conviction such as this which would have that effect. 'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.' R. Traynor, The Riddle of Harmless Error 50 (1970). No 'miscarriage of justice' will result here if we do not notice the error, [citation], and we decline to do so." (*Johnson* v. *United States*, *supra*, 520 U.S. at p. 470 [117 S.Ct. at p. 1550], fn. omitted.)

What does *Johnson* amount to? It indicates, in the context of direct review of a federal criminal judgment subject to the Federal Rules of Criminal Procedure, that the United States Supreme Court has not squarely held whether, on direct review of a state criminal judgment not subject to those rules, an instructional omission of an element of a crime is automatically reversible. Again, the court avoided the question: "It is by no means clear that the error here fits within" the "structural" class. (*Johnson* v. *United States*, *supra*, 520 U.S. at p. 469 [117 S.Ct. at p. 1550].) Justice Scalia avoided the avoidance by not joining therein. Contrary to the majority's assertion, the court did *not* "suggest[]" (maj. opn., *ante*, at p. 501) that, on direct review of a state criminal judgment, an instructional omission of an element of a crime is *not* automatically reversible. Also contrary to their assertion, the fact that the court, at the end, relied in part on its own view that the "evidence supporting materiality was 'overwhelming . . .' " (*Johnson* v. *United States*, *supra*, 520 U.S. at p. 470 [117 S.Ct. at p. 1550]) does not conflict with the reasoning of *Sullivan* and its implication that an

instructional omission of an element of a crime is automatically reversible. That is because any claim as to such an omission was not preserved for review. In circumstances of this sort, all that remained to determine under rule 52(b) as construed in *Olano* was, in effect, whether justice had miscarried. In view of the fact that the government "ha[d], in fact, proved" the element in question "beyond a reasonable doubt," albeit not "to the satisfaction of a jury" (*Yates* v. *Evatt, supra*, 500 U.S. at p. 414 [111 S.Ct. at p. 1898] (conc. opn. of Scalia, J.), italics omitted), the conclusion must be no.

Having disposed of *Roy* and *Johnson*, we come to this. Recall the hypothetical about Defendant A and Defendant B with its graphical depiction of the jury verdict returned against each. (See pp. 527-528, *ante*.) The instructional omission at Defendant A's trial bearing on the standard of proof beyond a reasonable doubt is automatically reversible under *Sullivan*'s holding because a reviewing court cannot supply its own findings of the elements of the crime *beyond a reasonable doubt* in place of the jury's findings *not beyond a reasonable doubt*—graphically, it cannot make up for what is partially lacking in each of the bars representing the elements. The majority effectively admit this proposition, as they must. The instructional omission at Defendant B's trial of one of the elements is automatically reversible under *Sullivan*'s reasoning because a reviewing court cannot supply its own *finding* of the element in place of the jury's *nonfinding*—graphically, it cannot make up for what is totally lacking in the bar representing that element. The majority effectively deny this proposition, as they may not. For, if a reviewing court cannot make up for what is partially lacking in all the elements, it cannot make up for what is totally lacking in one: if it cannot supply part of all, it cannot supply all of a part.

Next, in concluding that the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer can be held harmless beyond a reasonable doubt under *Chapman*, the majority rely largely on certain apparent exceptions to the rule of automatic reversal for an omission of this sort.

In Justice Blackmun's plurality opinion in *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [103 S.Ct. 969, 74 L.Ed.2d 823], our later opinion in *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826] (hereafter sometimes *Garcia*), and Justice Scalia's still later concurring opinion in *Carella*, four such exceptions suggest themselves: (1) the element belonged only to a crime as to which the jury acquitted the defendant; (2) the element was admitted by the defendant; (3) the element was necessarily found by the jury under other, proper instructions; and (4) the element was effectively found by the jury inasmuch as it was an ultimate presumed fact that was so

closely related to its predicate facts that the jury's finding of the latter was functionally equivalent to a finding of the former.

In this cause, however, the first of these exceptions is not applicable. The majority do not claim otherwise. The peace officer element of the crime of willful flight from a peace officer did not belong only to a crime as to which the jury acquitted defendant. Rather, it pertained to one of which it found him guilty.

Neither is the second of these exceptions applicable. The peace officer element was not admitted by defendant. True, it was not contested in the course of his defense. But it was put into dispute by his plea of not guilty (Pen. Code, § 1019), and was not removed from dispute by any of his acts or omissions thereafter. The majority argue to the contrary. Wrongly. In part, they assert that defendant requested the pattern instruction followed by the superior court, in which the latter directed, apparently sua sponte, that "Officer Bridgeman and Officer Gurney *are* peace officers." (Italics added.) The record on appeal discloses that defendant asked for the pattern instruction. But it does *not* disclose that he asked for the direction that Bridgeman and Gurney were, in fact, peace officers. In other part, the majority assert, in effect, that a defendant admits any element that he fails to contest. If that were so, most defendants, who do not defend scattershot, would be deemed to admit most elements, and some, who defend by mistaken identity, would be deemed to admit all. And if *that* were so, the requirement of the Fourteenth Amendment's due process clause that the state must prove every element of a crime beyond a reasonable doubt would be rendered nugatory.[10]

The third of these exceptions is also not applicable. The majority do not claim otherwise. The peace officer element was not necessarily found by the jury under other, proper instructions. Instead of being *found*, it was *given*: the superior court simply directed that "Officer Bridgeman and Officer Gurney *are* peace officers." (Italics added.)

Neither is the fourth of these exceptions applicable. The peace officer element was not effectively found by the jury. To repeat: Instead of being *found*, it was *given*. In any event, there were simply no "predicate facts" that might be said to underlie the "ultimate fact" of the status of Officer

---

[10]See *Rogers* v. *United States* (1998) 522 U.S. 252 [118 S.Ct. 673, 139 L.Ed.2d 686]. There, having granted a petition for writ of certiorari in order to decide whether, on direct review of a federal criminal judgment, an instructional omission of an element of a crime is automatically reversible when the defendant admitted the element at trial, the United States Supreme Court dismissed the writ as improvidently granted on the ground that the question was not "fairly" (*id.* at p. __ [118 S.Ct. at p. 675] (plur. opn.)) or "cleanly" (*id.* at p. __ [118 S.Ct. at p. 677] (conc. opn. of O'Connor, J.)) presented.

Bridgeman and Officer Gurney as peace officers. Here too, the majority argue to the contrary. Again, wrongly. At bottom, they assert that the evidence that Bridgeman and Gurney were peace officers was "overwhelming." They must know that, even in a proper case, such an invocation has no talismanic force. They must also know that this is not a proper case. For, although there was indeed evidence as to Bridgeman's and Gurney's "employ[ment] in [the] capacity" of "police officer[s]" of the City of Richmond (Pen. Code, § 830.1, subd. (a)), there was none whatsoever as to their "appoint[ment] by the chief of police or the chief executive of the agency" (*ibid.*). The majority attempt to deny the absence of evidence of "appointment" and, more radically, the absence of any requirement of such evidence. I have already shown that they fail. I need not do so once more.

In *Garcia*, we derived from *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], and *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], a possible additional exception—one that would cover a case in which the "parties recognized that" the omitted element was "in issue," during which they "presented all evidence at their command" thereon, and in which the "record not only establishes" the element "as a matter of law but shows the contrary evidence not worthy of consideration." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556.) In so doing, we stated that we were then "uncertain whether the United States Supreme Court" would "endorse" such an exception. (*Ibid.*)

After *Sullivan*, we find our "uncertainty" dispelled: we now know that the United States Supreme Court will not "endorse" the *Cantrell-Thornton* exception. For this exception—which is unique to California, and has never even been referred to by the court of any other jurisdiction, state or federal, in a reported decision—would require a reviewing court to infer what the parties knew, assess what they did, and then determine in whose direction, and how sharply, the balance of evidence verged. If it were to do that, a reviewing court would "engage in pure speculation—its view of what a reasonable jury would have done." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 281 [113 S.Ct. at p. 2082].) And if it were to do *that,* " 'the wrong entity [would] judge[] the defendant guilty.' " (*Ibid.,* italics added.)

But even if the *Cantrell-Thornton* exception could be accepted, it would not be applicable here. For we could hardly conclude, as we would have to, that the People and defendant "recognized" that the peace officer element was "in issue." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556.) The People requested an instruction, to which defendant did not object, that—at least as given (see p. 522, *ante*)—all but expressly stated that the peace officer element was *not* "in issue": "Officer Bridgeman and Officer Gurney *are*

peace officers." (Italics added.) Furthermore, we could hardly conclude, as we would have to, that the People and defendant "presented all evidence at their command" on the peace officer element. (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556.) As stated, neither the People nor defendant presented any evidence whatsoever on the underlying question whether Bridgeman and Gurney had been "appointed by the chief of police or the chief executive of the agency." (Pen. Code, § 830.1, subd. (a).) Again, the majority attempt to deny the absence of evidence of "appointment" and, more radically, the absence of any requirement of such evidence. Again, I have already shown that they fail, and need not do so once more.

In substance and effect, the majority hold the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer to be harmless beyond a reasonable doubt under *Chapman* "upon" their own "view" that the " 'evidence' " that Officer Bridgeman and Officer Gurney were peace officers was " 'overwhelming.' " (*Chapman* v. *California, supra,* 386 U.S. at p. 23 [87 S.Ct. at p. 827].) By its very terms, *Chapman* precludes them from doing so. (*Ibid.*) "The most" that they could "conclude is that" the "jury"—provided that it had been presented with evidence that Bridgeman and Gurney were "appointed by the chief of police or the chief executive of the agency" (Pen. Code, § 830.1, subd. (a))— "*would surely have found*" defendant "guilty beyond a reasonable doubt . . . ." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 280 [113 S.Ct. at p. 2082], italics in original.) But "[t]hat is" simply "not enough." (*Ibid.*)[11]

---

[11]As to the views expressed by my colleagues in their separate opinions, I note as follows. I disagree with Justice Chin that the "jury could not possibly find what it *actually did find* without also finding" the omitted peace officer element of the crime of willful flight from a peace officer. (Conc. opn. of Chin, J., *ante,* at p. 521, italics in original.) As I explain in the text, the jury did not find "predicate facts" that might be said to underlie the "ultimate fact" of the omitted element. Nor could it have done so. As I also explain in the text, there was no evidence whatsoever on the underlying question whether Officer Bridgeman and Officer Gurney had been "appointed by the chief of police or the chief executive of the agency." (Pen. Code, § 830.1, subd. (a).) By contrast, I agree with much of what Justice Werdegar has written, even though she concurs in the judgment and I do not. But, as I set out in the text, the *Cantrell-Thornton* exception is neither viable nor available. Finally, I agree with even more of what Justice Kennard has written, joining her in dissent. Nevertheless, I part company with her when she states: "Omitting an element from the jury's consideration is not the sort of error that ' "def[ies] analysis by 'harmless error' standards." ' " (*Sullivan* v. *Louisiana* [(1993)] 508 U.S. 275, 281 [113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182], quoting *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309 [111 S.Ct. 1246, 1249-1250, 113 L.Ed.2d 302].)" (Dis. opn. of Kennard, J., *post,* at p. 557, fn. 3.) *Sullivan* does indeed quote the indicated language from *Fulminante.* But, as I demonstrate in the text, it does *not* support in its holding the proposition for which it is apparently cited. Indeed, in its reasoning it supports the contradictory. I also part company with her as to any need for guidance from the United States Supreme Court. I repeat: "We are under a solemn obligation to interpret and implement the United States Constitution. We are no less capable of discharging that duty than any other

## IV

Because the superior court committed reversible error under the United States Constitution by omitting from its instructions the peace officer element of the crime of willful flight from a peace officer, I would reverse the judgment of the Court of Appeal to the extent that it affirmed the judgment of the superior court convicting defendant of this crime.

**KENNARD, J.**—I dissent.

The Sixth Amendment to the federal Constitution "gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." (*United States* v. *Gaudin* (1995) 515 U.S. 506, 522-523 [115 S.Ct. 2310, 2320, 132 L.Ed.2d 444].) The jury's "constitutional responsibility," the high court said in *Gaudin*, includes applying the law to the facts to determine the existence of each element of the crime—"that is, [the] 'ultimate' or 'elemental' fact[s]" needed to convict. (*Id.* at pp. 514-515 [115 S.Ct. at p. 2316].) No matter how inescapable a defendant's guilt of an element may seem in light of the evidence presented, the judge must have the jury make the ultimate finding on each element of the crime charged. Here, however, the trial court's instructions precluded the jury from independently determining one element of the charged offense.

Does this error require automatic reversal of defendant's conviction? Or is it subject to the "harmless error" test of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065], which requires reversal for federal constitutional error unless the reviewing court concludes that "beyond a reasonable doubt" the error "did not contribute to" the jury's verdict? I agree with the majority that the latter test governs this case. I differ with the majority, however, as to the manner in which the test should be applied here.

As I have pointed out in the past: "To determine whether an error 'contributed to' a verdict, a reviewing court does not ask whether a hypothetical jury in a hypothetical trial in which the error did not occur would surely have reached the same verdict. (*Sullivan* v. *Louisiana* (1993) 508 U.S.

---

court." (*People* v. *Harris, supra,* 9 Cal.4th at p. 449, fn. 1 (conc. & dis. opn. of Mosk, J.).) I add: "We 'should disabuse [ourselves] of the notion that in matters of constitutional law and criminal procedure we must always play Ginger Rogers to the high court's Fred Astaire— always following, never leading.' " (*Ibid.,* quoting *People* v. *Cahill, supra,* 5 Cal.4th at pp. 557-558 (dis. opn. of Kennard, J.).)

Because of the result that I reach, I need not determine whether the superior court's instructional omission of the peace officer element of the crime of willful flight from a peace officer is erroneous and automatically reversible under the California Constitution. The less said about *Cahill* the better. Unless what is said is "overruled."

[275, 279] [124 L.Ed.2d at pp. 182, 188-189, 113 S.Ct. 2078, 2081].) Rather, the reviewing court must ask whether the guilty verdict actually rendered in this trial was '*surely unattributable to the error.*' (*Ibid.*) This is because the Sixth Amendment right to jury trial means that the jury, and not a reviewing court, must find beyond a reasonable doubt every fact needed to convict." (*People* v. *Harris* (1994) 9 Cal.4th 407, 455-456 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. & dis. opn. of Kennard, J.), italics added.) This is the test that United States Supreme Court Justice Antonin Scalia articulated in his concurring opinion in *Carella* v. *California* (1989) 491 U.S. 263, 267 [109 S.Ct. 2419, 2421-2422, 105 L.Ed.2d 218], which the entire nine-member court later adopted in *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [113 S.Ct. 2078, 124 L.Ed.2d 182].

The majority rejects that approach, concluding it does not apply when evaluating the prejudicial effect of an instructional error that, as here, has removed an element of an offense from the jury's consideration. Instead, proceeding by a novel approach of its own invention, the majority declares the error to be "harmless beyond a reasonable doubt." I disagree. Because there is no basis for concluding that the jury's guilty verdict was "surely unattributable to the error," the error was not harmless beyond a reasonable doubt and the judgment must be reversed.

I

While evading a pursuing police car containing Richmond Police Officers Rudy Bridgeman and Michael Gurney, defendant's car collided with a van, seriously injuring its occupants. Under Vehicle Code section 2800.1 (further undesignated statutory references are to this code), it is a misdemeanor for a driver "while operating a motor vehicle and with the intent to evade, [to] willfully flee[] or otherwise attempt[] to elude a pursuing peace officer's motor vehicle" if that vehicle (1) "is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp"; (2) "is sounding a siren"; (3) "is distinctively marked"; and (4) "is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform." The crime becomes a felony, however, when the defendant's attempt to elude the pursuing peace officer "proximately causes death or serious bodily injury to any person" (§ 2800.3); that was the offense charged against defendant. Here, the trial court's instruction to the jury included the statement, "Officers Bridgeman and Gurney are peace officers." The jury found defendant guilty as charged.

II

To find defendant guilty of violating section 2800.3, the jury had to find, among other things, that he was trying to elude a car "operated by a peace

officer." In instructing the jury that "Officers Bridgeman and Gurney are peace officers," the trial court removed from the jury's consideration a necessary factual finding on an element of the offense.

As I observed in *People* v. *Harris, supra,* 9 Cal.4th 407, 457 (conc. & dis. opn. of Kennard, J.): "Under the United States Supreme Court's decisions in *Yates* v. *Evatt* [(1991)] 500 U.S. 391 [111 S.Ct. 1884, 114 L.Ed.2d 432], and *Sullivan* v. *Louisiana, supra,* 508 U.S. [275, 279] [124 L.Ed.2d 182, 113 S.Ct. 2078], the focus of the harmless error analysis is upon the verdict actually rendered in this case, not the verdict that would have been rendered in a hypothetical trial free of the instructional error. Thus, if an instructional error prevents the jury from making a necessary factual finding, it is generally irrelevant that the evidence supporting that finding was overwhelming."

To determine whether instructional error "contributed to" the verdict within the meaning of the "harmless error" test of *Chapman* v. *California, supra,* 386 U.S. 18, the reviewing court must ask whether the guilty verdict actually rendered in this trial was "surely unattributable to the error." (*Sullivan* v. *Louisiana, supra,* 508 U.S. 275, 279 [113 S.Ct. 2078, 2081].)

When can a reviewing court be assured that a jury's guilty verdict actually rested on findings that the jury made and thus was "surely unattributable" to instructional error that removed from the jury's consideration an element of the crime charged? One instance that comes to mind is when the jury has necessarily resolved the factual question under other properly given instructions. (*California* v. *Roy* (1996) 519 U.S. 7 [117 S.Ct. 337, 339-340, 136 L.Ed.2d 266] (conc. opn. of Scalia, J. ["if the jury verdict on other points effectively embraces this one"]); *People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].) That exception does not apply here, however, because the trial court's instruction that "Bridgeman and Gurney are peace officers" precluded the jury from independently concluding otherwise.

Another instance of harmless error is described in Justice Scalia's concurring opinion in *Carella* v. *California, supra,* 491 U.S. 263, 271 [109 S.Ct. 2419, 2423]: "When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed. The error is harmless because it is 'beyond a reasonable doubt,' *Chapman* v. *California,* 386 U.S. 18, 24 [87 S.Ct. 824, 828, 24 A.L.R.3d 1065] (1967), that the jury found the facts necessary to support the conviction." (Accord, *Sullivan* v. *Louisiana, supra,* 508 U.S. 275, 280-281 [113 S.Ct. at pp. 2082-2083].)

In my concurring and dissenting opinion in *People* v. *Osband* (1996) 13 Cal.4th 622, 746 [55 Cal.Rptr.2d 26, 919 P.2d 640], I adapted that analysis to instructional error that omitted from the jury's consideration one element of a special circumstance allegation. Under the law governing *Osband*, the jury could return a "true" finding on the felony-murder special-circumstance allegation only if persuaded that the defendant acted with "intent to kill." (*People* v. *Osband, supra,* 13 Cal.4th at pp. 746-747 (conc. & dis. opn. of Kennard, J.).) Based on the jury's finding that defendant killed the victim, a frail, 66-year-old woman, by brutally beating and stabbing her, I concluded that the facts the jury necessarily found in the course of its determination that defendant committed the killing were "functionally equivalent" to a finding that in doing so the defendant had acted with the requisite intent to kill. (*Ibid.*)

This case is distinguishable from *Osband.* It is true that by finding defendant guilty of violating section 2800.3, the jury must have necessarily found the statutory elements that defendant was fleeing from a "distinctively marked" car displaying "at least one lighted red lamp visible from the front" and "sounding a siren." These determinations, however, are not "functionally equivalent" (*Carella* v. *California, supra,* 491 U.S. 263, 271 [109 S.Ct. 2419, 2423-2424] (conc. opn. of Scalia, J.)) to a finding that the driver of the "distinctively marked" car was indeed a peace officer within the meaning of the statute. Therefore, the jury's findings were not "so closely related to the ultimate fact" (*ibid.*) of whether the driver of the pursuing car was a peace officer that no rational jury could find those other elements without also finding that ultimate fact. Stated another way, nothing in the jury's findings or verdict establishes that the jury independently, uninfluenced by the trial court's erroneous jury instruction, made a finding on the ultimate fact in issue, namely whether the driver of the pursuing car was indeed a peace officer within the meaning of section 2800.3.

A third instance in which failure to have a jury determine the existence of an element can be harmless error is when the defendant concedes or admits the omitted element. (*Carella* v. *California, supra,* 491 U.S. 263, 271 [109 S.Ct. 2419, 2423-2424] (conc. opn. of Scalia, J.).) I relied on this exception in my concurring and dissenting opinion in *People* v. *Harris, supra,* 9 Cal.4th 407, 452. There, the trial court had misinstructed the jury on the "taking" necessary to commit a robbery. I concluded that the instructional error was harmless because the defendant through his own testimony and his lawyer's closing argument had admitted "every fact needed to convict" him of the robbery including facts sufficient to establish the necessary taking. (*Id.* at p. 459 (conc. & dis. opn. of Kennard, J.).)

As I explained in *Harris:* "When a fact is undisputed, it is reasonable to assume that the jury accepted it as true, because ordinarily the jury would

have no reason to do otherwise. But it does not follow that the jury actually rested its verdict on the undisputed fact. An erroneous jury instruction may cause a jury to dismiss as irrelevant an undisputed fact that is essential to the guilt determination. Thus, an undisputed fact does not 'cure' an instructional error by providing assurance that the jury actually rested its verdict on the undisputed fact. [¶] The reason undisputed facts 'cure' instructional error may be found in the nature of the constitutional guarantee of jury trial." (*People* v. *Harris, supra,* 9 Cal.4th 407, 459 (conc. & dis. opn. of Kennard, J.).)

I pointed out in *Harris* that the right to jury trial in criminal cases includes a right to have the jury rather than a court decide every "issue of fact" necessary to establish the elements of the charged offense. (*People* v. *Harris, supra,* 9 Cal.4th 407, 459 (conc. & dis. opn. of Kennard, J.).) When, however, the defendant has admitted a fact or the parties have stipulated to its existence, there is nothing left for the jury to resolve with regard to that one issue. (*Ibid.*)

Defendant's "not guilty" plea in this case put in issue every fact necessary to convict him of the charged offense. (Pen. Code, § 1019; *People* v. *Balcom* (1994) 7 Cal.4th 414, 422 [27 Cal.Rptr.2d 666, 867 P.2d 777].) As the majority acknowledges, defendant "did not affirmatively admit—through testimony or by stipulation, for example—that Bridgeman and Gurney were peace officers." (Maj. opn, *ante,* at p. 504.) In this respect, this case differs from the situation described in my concurring and dissenting opinion in *People* v. *Harris, supra,* 9 Cal.4th 407.

Here, when the trial court instructed the jury that the occupants of the pursuing car were peace officers, the trial court and not the jury made the actual finding on the existence of an "ultimate fact" needed to convict defendant of a violation of section 2800.3: that the car he was evading was, in the words of the statute, "operated by a peace officer." Because defendant did not concede the issue, the trial court's instruction deprived defendant of his Sixth Amendment right to have the jury determine, beyond a reasonable doubt, "his guilt of every element of the crime with which he is charged." (*United States* v. *Gaudin, supra,* 515 U.S. 506, 522-523 [115 S.Ct. 2310, 2320].) Accordingly, I cannot conclude beyond a reasonable doubt that the error in this case did not affect "the guilty verdict actually rendered" (*Sullivan* v. *Louisiana, supra,* 508 U.S. 275, 279 [113 S.Ct. 2078, 2081]) by the jury.

## III

The majority concludes that the trial court's error in removing an element of the charge from the jury's consideration was harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [87 S.Ct. 824,

828].) To reach this conclusion, the majority does not articulate a coherent theory of "harmless error" applicable to instructional error removing an element from the jury. Instead, it concocts a novel approach consisting of a hodgepodge of reasons. It is unclear whether any one of these reasons would render the instructional error harmless, or whether harmlessness can be deduced from the totality of reasons.

According to the majority, "defendant *effectively* conceded" the peace officer issue by requesting "the CALJIC instruction that included the optional, bracketed phrase instructing the jury that the officers were peace officers, and nothing in the record suggests that he objected to the trial court's informing the jury that Bridgeman and Gurney were peace officers." (Maj. opn., *ante*, at pp. 504-505, italics added.)

Here are the relevant facts: In instructing the jury on the elements necessary to prove the charged crime, the trial court used a version of CALJIC No. 12.86 that included an optional bracketed phrase "[___ is a peace officer.]"[1] At the prosecution's request, the trial court used the bracketed version to instruct the jury, "Officers Bridgeman and Gurney are peace officers." Defendant too had asked the court to give CALJIC No. 12.86, and he did not object to the modified version just described. But, as the majority acknowledges, "Nothing in the record . . . indicates that defendant specifically asked the court to give the optional peace officer portion of CALJIC No. 12.86." (Maj. opn., *ante*, at p. 478.)

The majority reads far too much into defendant's request for CALJIC No. 12.86, a standard jury instruction defining the charged crime. Defendant was entitled to have the jury instructed on the general principles of law raised by the evidence. (*People* v. *Daniels* (1991) 52 Cal.3d 815, 885 [277 Cal.Rptr. 122, 802 P.2d 906]; 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2924, pp. 3584-3586.) Chief among these "general principles" are the elements the jury must find to return a guilty verdict on the charged crime. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d

---

[1]As relevant here, CALJIC 12.86 (1993 new) (5th ed. pocket pt.) reads: "[Defendant ___ is accused [in count[s] ___] of having violated Vehicle Code Section 2800.3, a crime.] [¶] Every person who, while operating a motor vehicle and with the specific intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer, and [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front, and the person either sees or reasonably should have seen the lamp; [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary; [¶] (3) The peace officer's motor vehicle is distinctively marked; and [¶] (4) The peace officer's motor vehicle is operated by a peace officer wearing a distinctive uniform; [¶] is guilty of a violation of Vehicle Code section 2800.1, a misdemeanor. [¶] Every person who flees or attempts to elude a pursuing peace officer in violation of Vehicle Code Section 2800.1 and the flight or attempt to elude causes death or serious bodily injury to any person is guilty of a violation of Vehicle Code section 2800.3, a felony. [¶] [___ *is a peace officer.*]" (Italics added.)

796, 850 P.2d 1].) Defendant's obvious purpose in requesting the standard jury instruction was to ensure that the jury would be instructed on the elements of the offense, not to remove one of those elements from the jury's consideration.

Furthermore, our law does not require an accused to object to erroneous jury instructions. (Pen. Code, § 1259.) Defendant was therefore under no obligation to object to the erroneous instruction that precluded the jury from independently determining the existence of the "peace officer" element of the offense with which defendant was charged. "[A] fact becomes undisputed in a criminal trial only if the defense affirmatively concedes it." (*People* v. *Harris*, *supra*, 9 Cal.4th at p. 458, fn. 2 (conc. & dis. opn. of Kennard, J.).) Thus, contrary to the majority's assertion, defendant did not by his silence "effectively" acquiesce in, agree with, or concede to the giving of the modified instruction.

The majority also asserts that "the jury resolved every contested issue in favor of the prosecution," noting the jury's findings that the car pursuing defendant was "distinctively marked" and that its occupants were wearing "distinctive" uniforms. (Maj. opn., *ante*, at p. 505.) But the majority never explains how these jury findings on elements other than the one at issue here render the trial court's instructional error harmless. Whatever findings the jury did make in finding defendant guilty of violating section 2800.3, it was never asked to decide whether the pursuing vehicle was, in the words of the statute, "operated by a peace officer." (See *ante*, p. 550.) Nor are any of the elements that the jury did find so closely related to the ultimate fact in issue—whether the driver of the pursuing car was indeed a peace officer within the meaning of section 2800.3—that no rational jury could find those elements without also finding the ultimate fact in issue. (*Ante*, at p. 551.)

The majority also concludes that this case satisfies the requirements of the so-called "*Cantrell-Thornton* exception," which this court fashioned in *People* v. *Garcia* (1984) 36 Cal.3d 539, 555-556 [205 Cal.Rptr. 265, 684 P.2d 826]. *Garcia* involved the failure to instruct "that proof of intent to kill or to aid a killing" was (under the law at that time) required for a finding on the felony-murder special circumstance.[2] This court reviewed then recent decisions by the United States Supreme Court and concluded that "at least eight justices of the United States Supreme Court . . . agree that a jury instruction which does take an issue completely from the jury is reversible per se." (*People* v. *Garcia*, *supra*, at p. 554.) Nonetheless, in the view of the *Garcia* court, the error could be harmless in cases "where the parties

---

[2]The *Cantrell-Thornton* exception is named after two earlier cases, *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256], and *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], that provided the basis for the *Garcia* court's analysis.

recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (*Id.* at p. 556, fn. omitted.)

Here, the majority attempts to justify its reliance on the *Cantrell-Thornton* exception on the ground that "the United States Supreme Court never has overturned a decision affirming a judgment on the basis of the *Cantrell-Thornton* exception." (Maj. opn., *ante*, at p. 506.) What the majority omits to mention, however, is that the high court has never reviewed a decision affirming a judgment on the basis of the *Cantrell-Thornton* exception. I am aware of no case (and the majority cites none) in which this court has relied exclusively on *Cantrell-Thornton* to uphold a conviction after the trial court omitted an element from the jury's consideration. It is true that some decisions of our Courts of Appeal have used the *Cantrell-Thornton* reasoning. But in the nearly 10 years since Justice Scalia, in his concurring opinion in *Carella* v. *California, supra,* 491 U.S. 263, 267 [109 S.Ct. 2419, 2421-2422], articulated a harmless error approach to evaluate prejudice when a trial court's instructional error has invaded the jury's factfinding function, only 2 published Court of Appeal decisions (*People* v. *Richie* (1994) 28 Cal.App.4th 1347 [34 Cal.Rptr.2d 200]; *People* v. *Riederer* (1990) 217 Cal.App.3d 829 [266 Cal.Rptr. 355]) have relied on *Cantrell-Thornton* to affirm a conviction rendered after the trial court omitted an element of the crime from the jury's consideration. In neither case did the defendant seek review in the United States Supreme Court. Thus, so far as I have been able to determine, the question whether the *Cantrell-Thornton* reasoning comports with federal constitutional standards has never been squarely presented to the high court.

The *Cantrell-Thornton* exception does not satisfy federal constitutional standards for deciding whether a jury's verdict was "surely unattributable to the error" (*Sullivan* v. *Louisiana, supra,* 508 U.S. 275, 279 [113 S.Ct. 2078, 2081]). Using *Cantrell-Thornton*, a reviewing court can deem constitutional error harmless without ever deciding, as required by the high court in *Sullivan*, that the error surely had no effect on "the guilty verdict actually rendered." (*Ibid.*) The majority does not claim that the *Cantrell-Thornton* exception comports with *Sullivan*. Rather, as the majority sees it, reviewing courts need not engage in the *Sullivan* mode of analysis in cases such as this in which the trial court's removal of a crime element from jury consideration was merely "misinstruction on a peripheral issue." (Maj. opn., *ante*, at p. 507.) It is the majority's mistaken view that the Sixth Amendment right to jury trial is fully satisfied if a jury returns a guilty verdict on a criminal charge after deciding some but not all of its elements. But the Sixth Amendment requires more. It "gives a criminal defendant the right to have a

jury determine . . . his guilt of *every element* of the crime with which he is charged." (*United States* v. *Gaudin, supra,* 515 U.S. 506, 522-523 [115 S.Ct. 2310, 2320], italics added.)[3]

---

[3]Justice Werdegar has authored a concurring opinion agreeing with the majority's reliance on the *Cantrell-Thornton* exception but disagreeing "that we may find the instructional error harmless on the theory the error concerned only a 'peripheral' element of the charged crime, or that defendant conceded the issue at trial." (Conc. opn. of Werdegar, J., *ante,* at p. 508.) As I have already explained, *Cantrell-Thornton* is not good law.

Justice Chin has signed the majority opinion. He has also written a concurring opinion "to emphasize a narrow basis for finding the error harmless" here. (Conc. opn. of Chin, J., *ante,* at p. 521.) In support, he quotes this language from Justice Scalia's concurrence in *California* v. *Roy, supra,* 519 U.S. 2, 7 [117 S.Ct. 337, 339-340] (conc. opn. of Scalia, J.): " 'The error . . . can be harmless only . . . if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well.' " (Conc. opn. of Chin, J., *ante,* at p. 521, italics in original.) Justice Chin then concludes in this case: "The verdict shows the jury rejected the defense position on every contested point beyond a reasonable doubt. This jury believed the critical witnesses' testimony, even those portions the defense challenged. This jury could not possibly find what it *actually did find* without also finding the unchallenged missing element." (*Ibid.,* italics in original.)

Contrary to Justice Chin's assertion, here the jury findings on issues that did not subsume the "peace officer" element, an issue the trial court removed from the jury, will not meet the standard taken from Justice Scalia's concurrence in *Roy.* Instead of quoting a selective sentence from a paragraph in Justice Scalia's concurrence in *Roy,* Justice Chin should have quoted the rest of the paragraph: "The absence of a formal verdict on this point cannot be rendered harmless by the fact that, given the evidence, no reasonable jury could have found otherwise. To allow the error to be cured in that fashion would be to dispense with the trial by jury. 'The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the state would be sustainable on appeal; . . .' " (*California* v. *Roy, supra,* 519 U.S. at p. 7 [117 S.Ct. at p. 339] (conc. opn. of Scalia, J.).) As I have pointed out earlier, "nothing in the jury's findings or verdict establishes that the jury independently, uninfluenced by the trial court's erroneous jury instruction, made a finding on the ultimate fact in issue, namely, whether the driver of the pursuing car was indeed a peace officer within the meaning of section 2800.3." (*Ante,* p. 551.)

Justice Mosk decides as I do that the judgment must be reversed, but he considers the instructional error in this case to be "automatically reversible" (dis. opn. by Mosk, J., *ante,* at p. 525) while I do not. Omitting an element from the jury's consideration is not the sort of error that " 'def[ies] analysis by "harmless error" standards.' " (*Sullivan* v. *Louisiana, supra,* 508 U.S. 275, 281 [113 S.Ct. 2078, 2082], quoting *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309 [111 S.Ct. 1246, 1264-1265, 113 L.Ed.2d 302].)

The diversity of views expressed in the several opinions in this case suggests that, as I have noted before, the controlling federal standard pertaining to harmless errror is not as clear as it might be, and further elucidation by the United States Supreme Court would thus be useful. (*People* v. *Harris, supra,* 9 Cal.4th 407, 460-461 (conc. & dis. opn. of Kennard, J.); see also *People* v. *Wims* (1995) 10 Cal.4th 293, 328, fn. 10 [41 Cal.Rptr.2d 241, 895 P.2d 77] (conc. & dis. opn. of Kennard, J.); *People* v. *Osband, supra,* 13 Cal.4th 622, 745, fn. 3 (conc. & dis. opn. of Kennard, J.).) As I observed in *Harris,* this court is not free to chart its own course on matters of *federal* constitutional law, "such as application of the federal harmless error standard under *Chapman* v. *California, supra,* 386 U.S. 18, 24 [87 S.Ct. 824, 828]"; instead, we must follow the rulings of the United States Supreme Court. (*Harris,* at p. 461, fn. 4 (conc. & dis. opn. of Kennard, J.).)

## CONCLUSION

"The constitutional right to a jury trial embodies 'a profound judgment about the way in which law should be enforced and justice administered.' *Duncan* v. *Louisiana*, 391 U.S. 145, 155 [88 S.Ct. 1444, 1450, 20 L.Ed.2d 491] (1968). It is a structural guarantee that 'reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.' *Id.*, at 156 [88 S.Ct. at p. 1451]. A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the State." (*Carella* v. *California, supra,* 491 U.S. 263, 268 [109 S.Ct. 2419, 2422] (conc. opn. of Scalia, J.).) No matter how overwhelming the evidence, the defendant has the right to have the jury and not the judge determine every element of a charged offense.

Here, the trial court improperly removed from the jury's consideration an element of the criminal charge. Because there is no basis here for concluding beyond a reasonable doubt that the trial court's error did not contribute to the jury's verdict of "guilty" in this case, I would reverse the judgment.